UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | : | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | 16-cr-281-2 (PGG) |
| | : | |
| vs. | : | |
| | : | |
| LATIQUE JOHNSON, | : | |
| BRANDON GREEN, | : | |
| and DONNELL MURRAY, | : | |
| | : | |
| Defendants. | : | |
| | : | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT BRANDON GREEN'S MOTION FOR JUDGMENT OF ACQUITTAL UNDER RULE 29(a) AND (c), OR FOR A NEW TRIAL UNDER RULE 33**

Eric R. Breslin, Esq.
Melissa S. Geller, Esq.
**DUANE MORRIS LLP**
One Riverfront Plaza
1037 Raymond Blvd., Suite 1800
Newark, New Jersey 07102
Telephone: 973.424.2000
Facsimile: 973.424.2001
*Attorneys for Defendant Brandon Green*

**Contents**

**FACTS** ..................................................................................................................................1

**ARGUMENT** .........................................................................................................................3

I.  **Judgment of Acquittal or, in the Alternative, a New Trial is Warranted on Count Five Because the Government Failed to Establish a Nexus Between the Recovered Guns and the Narcotics Conspiracy.** ...........................................................4

II. **Admission of the Guns Unduly Prejudiced Mr. Green, Requiring a New Trial on All Counts.** ..................................................................................................................7

III. **Certain of the Special Interrogatory Answers by the Jury Are Not Supported by the Evidence and Should Be Overturned.** ..................................................................8

    A.    The jury's findings that the pattern of racketeering that Mr. Green agreed would be committed involved at least two predicate crimes constituting "crimes of violence," is unsupported by the record. .............................................. 8

    B.    The jury's finding that Mr. Green agreed to traffic in crack and marijuana is unsupported by the record. ................................................................................. 8

IV. **Mr. Green Moves for a Judgment of Acquittal or, in the Alternative, a New Trial.** ..................................................................................................................................9

## **TABLE OF AUTHORITIES**

**Cases**

*United States v. Chavez*, 549 F.3d 119 (2d Cir. 2008) .................................................................. 4-5

*United States v. Galanis*, -- F. Supp. 3d --, No. 16-CR-371 (RA), 2018 WL 5999637 (S.D.N.Y. Nov. 15, 2018) ....................................................................................... 3

*United States v. Morgan*, 786 F.3d 227 (2d Cir. 2015) ..................................................................7

*United States v. Person*, No. 15-CR-466 (ILG), 2017 WL 2455072 (E.D.N.Y. June 6, 2017) ...................................................................................................................8

*United States v. Randolph*, 794 F.3d 602 (6th Cir. 2015) ..............................................................8

*United States v. Valle*, 807 F.3d 508 (2d Cir. 2015) ......................................................................3

**Statutes**

18 U.S.C. § 924(c) .................................................................................................................... 4-5, 7

**Other Authorities**

Federal Rule of Criminal Procedure 29 ................................................................................. 1, 3, 7-9

Federal Rule of Criminal Procedure 33 ............................................................................ 1-2, 3, 7, 9

Defendant Brandon Green submits this memorandum of law in support of his motion for judgment of acquittal under Federal Rule of Criminal Procedure 29, subsections (a)[1] and (c), and for a new trial under Federal Rule of Criminal Procedure 33.

## FACTS

The only physical evidence admitted against Mr. Green in nearly five weeks of trial consisted of "narcotics paraphernalia" seized from Mr. Green's apartment on his arrest, guns seized from a closet in a Bridgeport apartment, photographs showing him with other members of the Blood Hound Brims, snippets of a recorded jail call with Latique Johnson, a handful of text messages from Mr. Green's phone, and the stipulation confirming that the baggie seized in August 2010 contained cocaine.

The case against Mr. Green rested almost entirely on testimony by cooperators: Michael Adams, Rayshaun Jones, Manuel Rosario, and Kenneth Moore. Each of these witnesses had severe credibility problems when it came to Mr. Green. Mr. Adams made up an elaborate story about a plot to murder "Showtime," then the government's next witness demonstrated that Mr. Adams story made no sense and could not possibly be true. Mr. Adams' prior statements to law enforcement about Mr. Green showed that his tales about Mr. Green shifted and grew over the course of his cooperation. A fellow cooperator, Manuel Rosario, expressly stated that Mr. Adams was a liar:

> A: I mean, from, from, from the discovery that I've seen and what [Adams] stated, I seen fabrications. I seen a fabrication.
>
> Q: So you're saying he's not – you couldn't rely on him?
>
> A: I wouldn't rely on him, what Measy [Adams] says.

---

[1] On March 19, 2019, Mr. Green moved for judgment of acquittal on Count Five under Rule 29(a), on which the Court reserved decision. (Tr. 3223); Fed. R. Crim. P. 29(a) (providing that where decision is reserved, a later motion must be decided on the strength of the government's case at the time the ruling was reserved).

(Tr. 3052:23-3053:1).[2]

Mr. Jones was no more reliable. A two-time admitted perjurer, his story not only changed through the years, it also changed on the witness stand. Of the "Club Heat" incident, as concerns Mr. Green, Mr. Jones told two mutually inconsistent stories, insisting first that there was one car, then that there were two, among other troubling aspects of his testimony. (*See, e.g.,* Tr. 1779:1-9; 1993-1994 (highlighting two conflicting accounts by Jones of the events following the incident at Club Heat)). Mr. Jones also attempted to place Mr. Green at a leadership meeting in November 2011 prior to Club Heat, but was again proven a liar when it was disclosed at trial that the one and only time he met Mr. Green was at Club Heat. (*See* Tr. 1973-76 (comprising cross examination of Jones regarding the TGIF meeting); Green Exhibit U, ¶¶ 3, 5)).

Mr. Rosario never actually saw a drug deal take place, merely made assumptions about where the drugs came from. (*See, e.g.,* Tr. 2994:8-9 (testifying that "I can't recall the person, but it wasn't Light that gave [the heroin] to me. It was somebody that Light gave it to, to give to me," followed by an objection)). Finally, Mr. Moore testified to seeing Mr. Green lead a pow wow, his seven or eight-year-old son at his side. (Tr. 2257:19-23). But, Mr. Green did not have a son even remotely close to that age at the time of that pow wow. (Green Ex. T). Mr. Green could not have been the individual that Mr. Moore saw.

By far the strongest evidence against Mr. Green, however, were the six guns seized when he was arrested in May 2017, four months after the original indictment was unsealed, and nearly every member of the Blood Hound Brims had been arrested. The guns were located in the back of a closet on the second floor of an apartment in Bridgeport, Connecticut where Mr. Green was

---

[2] Transcript excerpts and all documents cited in this memorandum have been appended to the accompanying Declaration of Eric R. Breslin in Support.

arrested. Although the government alleges that "narcotics paraphernalia" were seized at the time of the arrest, no drugs were located during a search of the apartment. The government made no attempt to connect the guns to either the RICO conspiracy or the narcotics conspiracy.

On the strength of this evidence, March 27, 2019, the jury convicted Mr. Green on three counts of RICO Conspiracy (Count One), Narcotics Conspiracy (Count Four), and Possession of a Weapon in Aid of a Narcotics Conspiracy (Count Five). (*See* Verdict Form, ECF 570).

## ARGUMENT

In analyzing a motion under Rule 29, the Court must "view the evidence in the light most favorable to the Government with all reasonable inferences resolved in the Government's favor." *United States v. Valle*, 807 F.3d 508, 515 (2d Cir. 2015). But, that does not mean "that a reviewing court must affirm all jury verdicts." *Id.* Nor does it mean that a verdict must be affirmed "if there is any evidence that arguably could support the verdict." *Id.* Rather, the Court must determine "whether a jury could *reasonably* find guilt beyond a reasonable doubt." *Id.* (emphasis in original). Where evidence "viewed in the light most favorable to the prosecution gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence, then a reasonable jury must necessarily entertain a reasonable doubt." *Id.* (quoting *United States v. Lorenzo*, 534 F.3d 153, 159 (2d Cir. 2008).

Unlike under Rule 29, under a Rule 33 motion, the Court "'may weigh the evidence and determine the credibility of witnesses' and 'is not required to view the evidence in the light most favorable to the Government.'" *United States v. Galanis*, -- F. Supp. 3d --, No. 16-CR-371 (RA), 2018 WL 5999637, at *11 (S.D.N.Y. Nov. 15, 2018) (quoting *United States v. Tarantino*, No. 08-CR-655 (JS), 2012 WL 5430865, at *2 (E.D.N.Y. Nov. 7, 2012)). Rather, the Court must determine, taking all facts and circumstances of the case into account, that it would be a manifest injustice to allow the verdict to stand. *Id.*

3

**I.      Judgment of Acquittal or, in the Alternative, a New Trial is Warranted on Count Five Because the Government Failed to Establish a Nexus Between the Recovered Guns and the Narcotics Conspiracy.**

The jury convicted Mr. Green on Count Five, possession or use of firearms, or aiding and abetting the possession or use of a firearm during and in relation to, or in furtherance of, either the racketeering conspiracy, or the narcotics conspiracy in violation of 18 U.S.C. § 924(c).  By way of special interrogatories, the jury made clear that the underlying crime was the Narcotics Conspiracy (Count Four), not the RICO conspiracy (Count One).  (*See* Verdict Form, p. 8 (ECF 570)).  The jury also found that the government failed to prove that Mr. Green had brandished a firearm.  (*Id.* at 9).  Thus, the jury concluded that Mr. Green had possessed or aided and abetted the possession of a firearm in relation to or in furtherance of a narcotics conspiracy.

There were only three instances at the trial where testimony or evidence connected Mr. Green to guns.  The first was testimony by Michael Adams that he obtained a .22 handgun from Mr. Green shortly after Mr. Johnson's release from prison in late 2011.  The second was testimony by Rayshaun Jones that, following the incident at Club Heat, Mr. Jones saw Mr. Green with a gun in his hand.  Finally, government agents seized six guns from a closet in Mr. Green's apartment on the day of his arrest in May 2017.  None of this evidence can support a conviction under § 924(c).

On these facts, to maintain a conviction under § 924(c), the government cannot "merely [] rely[] on the proposition that drug dealers generally use guns to protect themselves and their drugs, and thus that any time a gun is possessed by a drug dealer it is possessed in furtherance of his drug offenses."  *United States v. Chavez*, 549 F.3d 119, 130 (2d Cir. 2008).  Rather, the government "'must establish the existence of a specific 'nexus' between the charged firearm and the [federal drug trafficking crime].'"  *Id.* (quoting *United State v. Lewter*, 402 F.3d 319, 321-22

4

(2d Cir. 2005) (alterations in original).  Whether or not a recovered gun has a nexus to the charged crime is a fact intensive inquiry.  *Id.*

In conducting the inquiry, "the ultimate question is whether the firearm afforded some advantage (actual or potential, real or contingent) relevant to the vicissitudes of drug trafficking.'"  *Id.* (quoting *United States v. Snow*, 462 F.3d 55. 62 (2d Cir. 2006).  The Court can consider a multitude of factors, including the location of the firearm, the accessibility of the firearm to the defendant, the location of the firearm in relation to drugs or drug proceeds, whether the weapon was stolen, and the circumstances under which the guns were found, among other considerations.  *Id.*  This inquiry recognizes that § 924(c) does not punish a drug dealer's innocent possession of a firearm.  *Id.*  Section § 924(c) applies only "where the charged weapon is readily accessible to protect drugs, drug proceeds, or the drug dealer himself."  *Id.*

The most likely basis for this conviction are the six guns located in the closet in the apartment where Mr. Green was arrested.  There is nothing in the record to support a finding that these guns had some nexus to the narcotics conspiracy.

First, the guns were not found in any proximity to any drugs or drug paraphernalia.  There were no drugs located in the apartment. (Tr. 780:19-21 (Eric Kushi Cross Examination)).  The alleged paraphernalia consisted of a coffee grinder, a strainer, and glassine bags.  (Tr. 751:15-19).  There was no evidence that drug residue was found on any of these items.  (Tr. 782-788).  These items were all located in the kitchen, on the first floor of the duplex apartment.  (Tr. 750:17-18; 751:15-19).  The guns were located in the back of a closet, in a bag, on the second floor.  (Tr. 755:20-21; GX 186C).  Only about $2,000 was also recovered from that closet.  (Tr. 757:1-2).

Second, the guns were not found within easy reach of Mr. Green, who was arrested, without incident, on the first floor. (Tr. 788:19-789:12). Even upstairs, where Mr. Green was when the agents first entered, it is clear that the guns were not in easy reach unless Mr. Green was physically standing in the closet.

Third, the circumstances of the arrest, and the other evidence introduced, suggest that Mr. Green did not possess these guns in connection with a narcotics conspiracy. By the time of his arrest in May 2017, nearly every member of the Blood Hound Brims had been in jail since January 2017, when the original indictment had been unsealed. Any narcotics conspiracy was thus effectively at an end. Furthermore, Mr. Green's cell phone search history strongly suggested that he was attempting to obtain cash after his arrest. His search history contains multiple searches for the prices and the values of various guns in his possession. (*See* GX 601A, pp. 9-10). Far from possessing these guns in the furtherance of a narcotics conspiracy, it appears that Mr. Green was seeking to raise money.

Apart from vague rumors, there were only two other instances in which testimony connected Mr. Green with guns. Michael Adams, a government cooperator, testified that Mr. Green gave him a gun and some cocaine when Mr. Johnson was released from prison in late 2011. (Tr. 173:9-16; Tr. 690:689:4-693:19). The government cannot establish a nexus with the narcotics conspiracy here. But, even if it could, Mr. Adams' testimony is unreliable. Mr. Adams' testimony is fundamentally at odds with his prior statements to government officials, calling this entire story into doubt. In prior statements, Mr. Adams expressly stated that "Light" gave him a gun to give to "La." (*See* Green Ex. V). Coupled with Mr. Adams clear perjury in

6

making up the entire "Showtime Murder Conspiracy," Mr. Adams' testimony cannot support the 924(c) conviction.[3]

There is nothing in the record at all to support a claim that the gun Mr. Jones allegedly saw, even if his testimony was remotely credible, had any connection to a narcotics conspiracy.

Because the government failed to establish any nexus to any gun connected to Mr. Green, and the narcotics conspiracy charged in Count Four, a judgment of acquittal is appropriate under Rule 29(a) and (c) is appropriate. Alternatively, Mr. Green requests a new trial as to Count Five under Federal Rule of Criminal Procedure 33.

## II. Admission of the Guns Unduly Prejudiced Mr. Green, Requiring a New Trial on All Counts.

The government admitted the six guns located upon Mr. Green's arrest, despite the fact that it never made any real attempt to connect the guns to any conspiracy. The admission of those guns was unduly prejudicial and tainted the rest of the trial. Because the government failed to connect the guns to any narcotics conspiracy, the admission of the guns was unduly prejudicial, and a new trial should be granted. *See United States v. Morgan*, 786 F.3d 227, 232 (2d Cir. 2015) (remanding for a new trial because of erroneous introduction of unfairly prejudicial evidence).

---

[3] Mr. Adams testified that Mr. Green participated in a conspiracy to murder Showtime. But, Mr. Adams' testimony was only possible if Mr. Green was the only one that knew "Showtime," and, more particularly, that "Puff" did not know "Showtime." That testimony was categorically refuted by Thomas Morton's testimony that "Puff" and "Showtime" had known each other for years. Crucially, the jury rejected this testimony, finding that the government failed to prove that Mr. Green aided and abetted the brandishing of a weapon, or that he was involved in a conspiracy to commit murder. (*See* Verdict Form, pp. 2, 9).

### III. Certain of the Special Interrogatory Answers by the Jury Are Not Supported by the Evidence and Should Be Overturned.[4]

   A.  The jury's finding that the pattern of racketeering that Mr. Green agreed would be committed involved at least two predicate crimes constituting "crimes of violence," is unsupported by the record.

In the special interrogatories, the jury determined that the government failed to prove that the pattern of racketeering activity that Mr. Green agreed would be committed involved murder, attempted murder, or conspiracy to commit murder. (Verdict Form, p. 2 (ECF No. 570)). The jury reached the same finding with regard to robbery, attempted robbery, or conspiracy to commit robbery under either Federal or New York law. (*Id.*). The racketeering activity on which the jury was instructed included only allegations of murder, robbery, and drugs. (Tr. 3628:5-3629:21).

The jury could therefore not reasonably have found that Mr. Green did not agree to engage in acts of murder or robbery, but still agreed to predicate acts involving "crimes of violence." The jury's finding on special interrogatory C of the verdict on Count One cannot be supported by the record and should be reversed.

   B.  The jury's finding that Mr. Green agreed to traffic in crack and marijuana is unsupported by the record.

In relation to Count One (RICO), the jury found that Mr. Green acted with an intent to distribute crack, or that it was reasonably foreseeable that the conspiracy to distribute would

---

[4] Mr. Green recognizes that challenges to special interrogatories appended to a general verdict are not a challenge to the verdict itself, unless the special interrogatory shows that the government failed to prove a required element of the charge. *See United States v. Randolph*, 794 F.3d 602, 608-13 (6th Cir. 2015) (overturning a conviction because the special interrogatory established that the government failed to prove an element of the charge, and providing a thorough discussion of the law on special interrogatories). Where, as here, the special interrogatories are not inconsistent with the general verdict, but do not invalidate the general verdict, they relate to sentencing. *See generally United States v. Person*, No. 15-CR-466 (ILG), 2017 WL 2455072, at *4 (E.D.N.Y. June 6, 2017) (containing a lengthy discussion of the law of special interrogatories in criminal cases and the role of special interrogatories post trial). Nevertheless, we have located no case that prohibits the Court from analyzing such decisions post-trial, and respectfully submit that the time to do it is now.

8

involve crack.  (Verdict Form, p. 4 (ECF 570)).  In relation to Count Four (narcotics), the jury found that Mr. Green participated in a narcotics conspiracy to distribute crack and marijuana. (*Id.* at pp. 6-7).  While there was some limited evidence that Mr. Green had some involvement with cocaine, there was no evidence that he had any involvement with crack at all.  Nor did the government offer any evidence that Mr. Green ever had any involvement with marijuana.  The complete lack of a record supporting Mr. Green's involvement with either crack or marijuana means that the jury's findings on this special interrogatory is unsupported by the evidence.

**IV.   Mr. Green Moves for a Judgment of Acquittal or, in the Alternative, a New Trial.**

Mr. Green moves for judgment of acquittal on all counts, or, in the alternative, for a new trial.  The conviction against Mr. Green was based on evidence provided almost entirely by Mr. Adams, whose perjury on the stand cannot be overlooked.  There was little evidence directly connecting Mr. Green to any drug activity and no reliable evidence connecting him to gang activity.  Consequently, Mr. Green moves for judgment of acquittal under Rule 29(c), or, in the alternative, for a new trial under Rule 33.

Dated:  Newark, New Jersey
April 25, 2019

/s/ *Eric R. Breslin*
Eric R. Breslin, Esq.
Melissa S. Geller, Esq.
**DUANE MORRIS LLP**
One Riverfront Plaza
1037 Raymond Blvd., Suite 1800
Newark, New Jersey 07102
Telephone: 973.424.2000
Facsimile: 973.424.2001
*Attorneys for Defendant Brandon Green*