

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

The Silvio J. Mollo Building
One Saint Andrew's Plaza
New York, New York 10007

November 22, 2019

**BY ECF AND EMAIL**

Honorable Paul G. Gardephe
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

     Re:    *United States v. Brandon Green*, S5 16 Cr. 281 (PGG)

Dear Judge Gardephe:

The Government respectfully writes in response to the Court's order dated November 12, 2019 requesting briefing on whether it is proper for the Court to address defendant Brandon Green's allegations of ineffective assistance of counsel in advance of sentencing.

While as a general matter a district court may, in its discretion, take up such allegations prior to the entry of judgement, the Court should decline to do so here. As further explained below, the defendant's *pro se* submission alleging these claims—filed more than 7 months after the verdict on March 28, 2019, more than 3 months after the defendant was appointed new counsel, and just days before sentencing—should be rejected as untimely. Fed. R. Crim. P. 33(b), 45(b)(1)(B). Resolving the defendant's ineffective assistance claims at this juncture would also result in substantial delay and disruption of the proceedings, factors which the Second Circuit has recognized are relevant to determining whether to hear pre-judgment ineffective assistance claims. In addition, the defendant's ineffective assistance claims are also facially implausible, and therefore do not justify the delay that would result.

Finally, the Government respectfully submits that the Court should reject Green's other claims in his *pro se* submission. Like his ineffective assistance claims, these other claims are untimely. In any event, they are completely meritless.

**PROCEDURAL HISTORY**

On March 27, 2019, the defendant was convicted after trial of racketeering conspiracy, in violation of Title 18, United States Code, Section 1962(d); narcotics conspiracy, in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(A); and using and carrying firearms in furtherance of drug trafficking, in violation of Title 18, United States Code, Section

Honorable Paul G. Gardephe
November 22, 2019
Page 2 of 9

924(c)(1)(A)(i).  (Docket No. 570).  On March 28, 2019, the Court entered an order requiring the defendant to file any post-trial motions pursuant to Federal Rules of Criminal Procedure 29 and 33 by April 18, 2019.  (Docket No. 572).  On April 15, 2019, the Court extended the deadline to file post-trial motions to April 25, 2019.  (Docket No. 637).  On April 25, 2019, the defendant's trial counsel filed a motion for acquittal and a new trial pursuant to Rule 29 and 33.  (Docket No. 639).  The Government filed its opposition to the defendant's motion on May 16, 2019 (Docket No. 651).

On July 11, 2019, the Court docketed a *pro se* submission from the defendant styled as a "Motion for Stay / Continuance" dated June 24, 2019 in which the defendant argued that his trial counsel failed to meet with him and include all meritorious claims in his Rule 29 and 33 pleadings.  (Docket No. 680).  As a result, the defendant requested that the Court stay the proceedings and continue his scheduled sentencing date.

On July 25, 2019, the Court held a change-of-counsel conference and granted the defendant's request to relieve his trial counsel and retain a new attorney for purposes of sentencing.  The Court also scheduled the defendant's sentencing for October 31, 2019.

On September 17, 2019, the Court issued a memorandum opinion and order denying the defendant's motions for acquittal and a new trial.  (Docket No. 743) (the "Sept. Opinion").[1]  On September 28, 2019, the defendant's sentencing counsel filed a motion for reconsideration of the Sept. Opinion, raising a new claim regarding the validity of the defendant's conviction for racketeering conspiracy in light of the Supreme Court's decision in *United States v. Davis*, 588 U.S. ___ (2019).

On October 30, 2019—the day before the scheduled sentencing—the parties received notice that the Court intended to adjourn the defendant's sentencing, because of a *pro se* letter from the defendant that the Court had received.  This letter was then emailed to the parties on October 31, 2019 and docketed on November 1, 2019 (Docket No. 760) (the "Green *Pro Se* Submission").  This *pro se* letter is styled as "Mr. Green's Sentencing Memorandum," copies, *inter alia*, the President of the United States and Kim Kardashian, and requests that the Court dismiss all charges against him or grant him a new trial.  (Docket No. 760).  Among other things, the *pro se* sentencing memorandum noted that the defendant had hired new sentencing counsel, who had supplemented and amended the Rule 29 and 33 pleadings filed by trial counsel.  (Docket No. 760 at 7).  The defendant then listed a number of alleged deficiencies in trial counsel's performance, including agreeing to certain stipulations, failures to investigate, failures to communicate with the defendant, and deficiencies in trial counsel's opening statement.  (Docket No. 760 at 8-10, 15-17).

---

[1] The Court vacated the jury's finding that the conviction for racketeering conspiracy constituted a "crime of violence" following the Supreme Court's decision in *United States v. Davis*, 588 U.S. ___ (2019).

Honorable Paul G. Gardephe
November 22, 2019
Page 3 of 9

The Court held a conference on October 31, 2019. During that conference, sentencing counsel indicated that the *pro se* sentencing memorandum was filed without her knowledge. Sentencing counsel also indicated that she had already filed a motion for reconsideration of the Sept. Opinion, in which she had included all the arguments she deemed meritorious. The Court asked sentencing counsel to file a letter by November 7, 2019 indicating whether the defendant intended to pursue the arguments in his *pro se* sentencing submission in advance of sentencing. On or about November 7, 2019, the defendant's sentencing counsel filed a letter indicating that the defendant intends to pursue the arguments in his *pro se* sentencing memorandum but lacks the funds to retain counsel for that purpose. (Docket No. 767).[2] The defendant's sentencing counsel also expressed concerns about potential conflicts of interest because the litigation of these claims falls outside of the scope of the representation for which she was retained and also were filed without her knowledge or consent.

## APPLICABLE LAW

Whether to consider claims of ineffective assistance of counsel prior to sentencing is within the district court's discretion. *See United States v. Brown*, 623 F.3d 104, 113 (2d Cir. 2010) (holding that district courts "may, and at times should" consider such claims). The "proper procedural avenue" for defendants wishing to raise such claims would be a motion for a new trial pursuant to Rule 33. *Id.* at 113 n.5. The Second Circuit expressly does not require, however, that district courts always entertain claims of ineffective assistance of counsel raised before judgment is entered. *See United States v. Fleurimont*, 401 F. App'x 580, 582 (2d Cir. 2010) (noting that the *Brown* court had emphasized the multiple "special circumstances" of that case, including the "facial plausibility" of the defendant's claim that trial counsel was ineffective in failing to convey a pre-trial plea offer to him).

The Circuit has made clear that district courts, in deciding whether to exercise their discretion to inquire into the merits of ineffective assistance claims prior to judgment, face "competing considerations" including "the potential disruption of the proceedings." *Brown*, 623 F.3d at 113. Other relevant factors for deciding whether it is appropriate to consider ineffective assistance claims before sentencing could also include, among other things, "whether the court would need to relieve the defendant's attorney, or in any event, to appoint new counsel in order to properly adjudicate the merits of the claim." *Id.*; *see also Fleurimont*, 401 F. App'x at 582 (2d Cir. 2010) ("It is clear, however, that *Brown* does not require as a categorical matter that district courts grant a full-blown testimonial hearing in response to all such claims.").

Applying *Brown*, district courts within this Circuit have occasionally considered Rule 33 motions alleging ineffective assistance of counsel after conviction but prior to sentencing when doing so would not disrupt the proceedings. *See United States v. Thornhill*, 34 F. Supp. 3d 334,

---

[2] The defendant reiterated concerns that he lacks the funds to retain sentencing counsel to adjudicate his newly raised claims in yet another *pro se* letter dated November 6, 2019 and docketed earlier this week. (Docket No. 774).

Honorable Paul G. Gardephe
November 22, 2019
Page 4 of 9

359-60 (S.D.N.Y. 2014) (collecting cases).  In *United States v. Delarosa*, 2012 WL 3778855 (S.D.N.Y. Aug. 30, 2012), for example, the district court decided to consider the defendant's ineffective assistance of counsel claims because substitute counsel had already been appointed for sentencing, and so the court could evaluate the claims of ineffective assistance "free from concern that it will disrupt the proceedings or impair the attorney-client relationship."  *Id.* at *4.

However, nothing in the *Brown* line of cases can be read to suggest that a defendant can or should obtain unlimited bites at the Rule 33 apple.  *See generally*, *Brown*, 623 F.3d at 113 n.5 (analyzing whether the defendant's late filing was the product of "excusable neglect").  Federal Rule of Criminal Procedure 33(a) states that a district court may "vacate any judgment and grant a new trial if the interest of justice so requires."  Pursuant to Federal Rule of Criminal Procedure 33(b), a motion for a new trial "grounded on any reason other than newly discovered evidence must be filed within 14 days after the verdict or finding of guilty."  Federal Rule of Criminal Procedure 45(b)(1)(B) allows a district court to extend the deadline for a Rule 33 motion "after the time expires if the party failed to act because of excusable neglect."

The following factors are relevant in assessing the existence of excusable neglect: "(1) the risk of prejudice to the government; (2) the length of the delay and the impact on the proceedings; (3) the reason for the delay and whether it was within the defendant's control; and (4) the defendant's good faith or lack thereof in asking for an extension."  *United States v. Ketabchi*, 2019 WL 1510444, at *2 (S.D.N.Y. Mar. 25, 2019) (collecting cases).  The decision whether to grant an extension is within the Court's discretion.  *See United States v. Owen*, 559 F.3d 82, 84 (2d Cir. 2009) ("We conclude that, under these circumstances, where the Rule 33 motion is still pending before the District Court, the District Court is in the best position to decide, in the exercise of its informed discretion, whether [defendant's] *pro se* motion was timely under Rule 33 and Rule 45(b)."); *United States v. Malachowski*, 623 F. App'x 555, 557 (2d Cir. 2015) (finding no abuse of discretion in the district court's denial of Rule 33 motions as untimely); *United States v. Rivera*, 2013 WL 2627184, at *3 (E.D.N.Y. June 11, 2013) (denying Rule 33 motions based on ineffective assistance as untimely when raised 5 months after the verdict).

## DISCUSSION

### A.  The Defendant's Rule 33 Motion is Untimely and Would Disrupt the Proceedings

At the outset, all of the claims in the Green *Pro Se* Submission should be rejected as untimely.  The Court originally set a deadline for Rule 33 motions on April 25, 2019, and the defendant's trial counsel filed a motion on that date, which was rejected by the Court on September 17, 2019.  As a result, there is no question that the defendant's request for a new trial is untimely.

The defendant has not provided explanation for why the delay in bringing these claims until the eve of sentencing can be attributable to excusable neglect.  Nor, on this record, could

Honorable Paul G. Gardephe
November 22, 2019
Page 5 of 9

he.  The Government recognizes that some of his claims relate to alleged ineffective assistance
by his trial counsel, which explains why those claims were not raised in his April 2019 motion.
But even those claims are untimely: the defendant was appointed a new attorney on July 25,
2019, who has since filed a motion for reconsideration and a sentencing submission.  Sentencing
counsel's motion for reconsideration did not raise any ineffective assistance claims regarding the
defendant's trial counsel.  Even now, the defendant's sentencing counsel has indicated that she
included all claims that she believed were potentially meritorious in her motion for
reconsideration.  As a result, the defendant has not provided any valid justification for the delay
in raising these claims.  Meanwhile, litigating the merits of the defendant's ineffective assistance
claims now would likely require a lengthy delay, impact the proceedings, and prejudice the
Government owing to a continued lack of finality.  Under these circumstances, the Court should
not find any excusable neglect for the delay in raising these untimely claims.

The defendant's ineffective assistance claims are also untimely because adjudicating
those claims at this juncture would considerably disrupt the proceedings.  In *Brown* and
*Delarosa*, the courts found that considering ineffective assistance claims prior to sentencing
would not disrupt the proceedings given that substitute counsel had raised the claims, and they
were otherwise facially plausible.  Neither of those factors is present here.  Rather, the
defendant's sentencing counsel did not raise any ineffective assistance claims in her post-trial
motions and has also stated that she is unable to represent the defendant for the litigation of those
claims.  Both sentencing counsel and Green have now noted that he lacks the funds to retain
counsel for that purpose.  As a result, reaching the merits of the defendant's ineffective
assistance claims could require the Court to appoint a new attorney for the defendant, even as his
retained attorney continues to represent him for sentencing purposes.  This newly appointed
attorney would then need to review the voluminous records and trial transcript from this case
before filing yet another supplementary Rule 33 motion, which would in all likelihood need to
address why the defendant's sentencing counsel failed to raise the ineffective assistance claims
in her motion for reconsideration to establish excusable neglect for the delay.  All of these steps
would delay sentencing in this case by at least several months, if not longer—all to resolve
claims that were not raised by the defendant until the eve of sentencing, and, for the reasons set
forth below, are not facially plausible.  On November 18, 2019, the defendant filed a *pro se* letter
indicating that he is not currently ready to proceed to a hearing on his ineffective assistance of
counsel claims and that he wishes to be represented by counsel to pursue such claims, further
underscoring the disruption resulting from his belated arguments.

## B.  The Defendant's Ineffective Assistance Claims Are Facially Implausible

Perhaps most importantly, the defendant's ineffective assistance claims are not facially
plausible, which strongly counsels against the need to resolve them prior to the entry of
judgment.  Quite to the contrary, all of the claims relating to trial counsel's performance before
and during trial lack merit.

Honorable Paul G. Gardephe
November 22, 2019
Page 6 of 9

First, the defendant argues that trial counsel failed to review plea offers with the defendant and was not given a fair opportunity to accept or deny the offers. (Green *Pro Se* Submission at 3). However, the record is clear that the defendant was familiar with all of the plea offers extended by the Government and had spoken at length about each of the offers with his trial attorney. (*See* Transcript of February 15, 2019 pretrial conference, attached hereto as Exhibit A, at 15 ("THE COURT: Are you familiar with all those plea offers? Do you remember those plea offers being made? Did you talk about those offers with Mr. Breslin? DEFENDANT GREEN: Yes."). At the time of the final pretrial conference, the defendant wished to accept a modified version of one of the plea offers that had been previously extended, but the record is clear that the offer had already expired. (*See id.* at 15-21). Indeed, the defendant's colloquy with the Court plainly demonstrates his detailed understanding of the various plea offers and articulates why he chose to reject them or let them expire. (*E.g.*, *id.* at 17-18 ("When they offered me the plea, me and my attorney -- we went over the plea, and I told my attorney I was willing to accept the plea, but I wanted to fix some of the enhancements.")). As a result, this case bears little resemblance to the facts in *Brown*, in which the Second Circuit found that the defendant's claim that his attorney was ineffective for failing to convey a plea offer to him appeared facially plausible given, *inter alia*, trial counsel's "equivocat[ion]" regarding whether he had communicated a particular offer to the defendant. *Brown*, 623 F.3d at 114.

Second, the defendant argues that trial counsel was ineffective in "stipulating" to evidence regarding an arrest in 2010 in which law enforcement officers seized cocaine from the defendant. (Green *Pro Se* Submission at 8-9, 15-17). The defendant also argues that trial counsel failed to locate court records that would reflect the disposition of the traffic stop, establishing that the Bronx District Attorney's Office dismissed its charges against the defendant. (*Id.*) Both of Green's arguments regarding the 2010 traffic stop are facially implausible given the law and the record, which Green mischaracterizes. "As a rule, counsel's decision to stipulate to certain evidence, like his decisions to offer or object to evidence, involves a strategic choice, which is 'virtually unchallengeable' if made after thorough investigation." *United States v. Gaskin*, 364 F.3d 438, 468 (2d Cir. 2004); *Williams v. United States*, No. 06 CR 319 LBS, 2014 WL 1911432, at *8 (S.D.N.Y. May 13, 2014), *report and recommendation adopted*, No. 13 CIV. 1234 AT, 2014 WL 2465202 (S.D.N.Y. June 2, 2014) ("In the context of criminal cases involving illegal narcotics, it is not uncommon for defense counsel to stipulate to the quantity and content of the drugs recovered by authorities rather than having the government's forensic experts take the stand. . . . Courts often deny ineffective assistance claims where a petitioner challenges a stipulation to facts that would have otherwise been introduced as evidence, recognizing that defense counsel may have chosen to focus their efforts on more potentially persuasive arguments.") (citing cases). At trial, defense counsel stipulated only to the forensic testing of the drugs which were already admitted through Officers Sisco's testimony, thus avoiding having the Government's forensic experts take the stand, a reasonable and common strategic decision. (Tr. 2883-84, GX 1014). As for the outcome of the state case, the parties entered a stipulation which informed the jury that the Bronx District Attorney's Office dismissed the state charges resulting from Green's arrest. (Tr. 2883-84, GX 1012). Therefore, Green's argument regarding his counsel's failure to locate state records is clearly meritless.

Honorable Paul G. Gardephe
November 22, 2019
Page 7 of 9

Relatedly, the defendant also argues that his trial counsel should have sought to admit a portion of an arrest report from 2010 in which the defendant's arresting officer indicated no known gang affiliation for the defendant at the time of the arrest. (Green *Pro Se* Submission at 9, 16). But this evidence—a document being offered for the truth of the matter asserted—would have been inadmissible at trial as hearsay. *See* Fed. R. Evid. 801. Additionally, one officer's view of whether Green had any gang affiliation in 2010 would have been inadmissible under a Rule 403 balancing analysis. As the Court found relating to similar evidence that co-defendant Donnell Murray's name was not in an NYPD gang database, the fact that an arresting officer was not aware of any gang affiliation for the defendant has very little probative value and could have resulted in the jury giving more weight to the evidence than it deserved. (*See* Trial Tr. at 1969-70).

Construing the defendant's *pro se* submission broadly, the defendant also appears to argue that his trial counsel should have sought to exclude all evidence of the 2010 testimony as not relevant. (Green *Pro Se* Submission at 9). This argument also fails. The defendant was charged in Count Four with participating in a conspiracy to distribute cocaine and other narcotics between in or around 2006 and in or around December 2016. The defendant was also charged in Count One with participating in a racketeering conspiracy, which involved narcotics distribution as a racketeering predicate. Under these circumstances, an incident in which the defendant was in possession of a large quantity of cocaine and arrested with another member of the Blood Hound Brims during the period of the charged conspiracy would be direct evidence of the charged crimes and highly probative. For this reason, the Court also denied Defendant Donnell Murray's motion to exclude evidence that Murray was in possession of a quantity of narcotics in Delaware in January 2017, finding that it was direct evidence of both the racketeering and narcotics conspiracies. (*See* Docket No. 525 at 14-15).

Next, the defendant argues that trial counsel incorrectly told the jury in the opening statements that the defendant had "big scales." (Green *Pro Se* Submission at 9, 17). Again, this argument is also contradicted by the trial record. During the defendant's opening statement, trial counsel cautioned the jury not to make a "snap decision" about the defendant's guilt, stating:

> The government hopes that if it can scare you enough and make you uneasy and nervous enough that you'll make a snap decision about Mr. Green, that you'll react to their buzz words and all the grabbed-from-the-headlines flash before anything else, big piles of guns and big scales and glassine envelopes, that you will not consider this case from all sides, that you will not look behind the curtain to analyze just what the government witnesses are saying but why they are saying it.

(Trial Tr. at 86). This opening statement did not concede that the defendant was ever in possession of digital scales, and there was no other evidence at trial suggesting that the defendant had ever been in possession of digital scales. There was evidence, however, that other members of the conspiracy were in possession of scales. (*See, e.g.*, Trial Tr. at 944, 2939, GX 128, 146,

Honorable Paul G. Gardephe
November 22, 2019
Page 8 of 9

708K).  As a result, it was a sound strategic decision for trial counsel to address the fact that the jury would see digital scales as evidence of the narcotics conspiracy during the course of the trial.

Finally, the defendant argues that his trial counsel should have investigated and challenged Western Union transactions establishing that Green wire transferred money while in Elmira.  (Green *Pro Se* Submission at 13); (*see* GX 500 at Rows 2-4).  The defendant further argues that his trial counsel should have pointed out that no evidence was presented regarding an alleged Western Union transaction between cooperating witness Manuel Rosario and co-defendant Saeed Kaid.  But the defendant does not provide any explanation for what, if anything, his trial counsel should have done to investigate or otherwise challenge the records reflecting that Green sent Western Union transactions from Elmira and Horseheads, especially given the trial testimony by multiple cooperating witnesses that Western Union transactions was one of the ways that members of the gang transferred proceeds from drug sales.  (*See* Trial Tr. at 2631-33, 2994-95).  As a result, this claim also fails on its face to plead a deficiency by defense counsel.

## C.  The Remaining Claims in the Defendant's Rule 33 Motion Should be Rejected

The Government also respectfully submits that the remaining claims in the defendant's *pro se* submission, which largely reiterate Rule 29 and 33 claims that have been previously raised and rejected, should be rejected as untimely.  As stated above, the defendant has provided no explanation for why these claims were raised on the eve of sentencing.  In any event, the defendant's claims also fail on the merits.  In his *pro se* submission, the defendant argues, among other things, that: (1) the Government's cooperating witnesses were not credible (Green *Pro Se* Submission at 6-8, 13-15); (2) the Government engaged in a malicious prosecution against the defendant, as shown by the credibility of the cooperating witnesses and the fact that his trial counsel successfully impeached an NYPD officer regarding the location of Green's 2010 arrest (Green *Pro Se* Submission at 1, 5, 14-15); and (3) the Government's witnesses during his suppression hearing lied about the circumstances of the defendant's arrest and their traffic stop of the defendant's girlfriend (Green *Pro Se* Submission at 5, 18).

All of these arguments have been rejected by the Court.  In the Sept. Opinion, the Court found that there was more than sufficient evidence to support the jury's verdict on the defendant's participation narcotics conspiracy, including testimony from multiple cooperating witnesses regarding the defendant's role as one of the gang's primary drug suppliers and seizures of drugs, guns, and drug paraphernalia from the defendant and other co-conspirators.  (Sept. Opinion at 56 n.35).  The jury also had an adequate opportunity to evaluate Officer Sisco's credibility in light of the defendant's impeachment and nevertheless decided to convict the defendant.  To the extent that the defendant also wishes to relitigate his motion to suppress regarding the evidence recovered during his May 2017 arrest, these arguments were also rejected in the Court's opinion on December 6, 2018 denying the defendant's motion to suppress (Docket No. 453) and are not properly raised in a Rule 33 motion in any event.  In its opinion denying the suppression motion, the Court found that the "Government's witnesses were clearly more

Honorable Paul G. Gardephe
November 22, 2019
Page 9 of 9

credible than Turcios" and ruled that the evidence in Green's apartment was seized lawfully. (Docket No. 453 at 23).  As a result, none of these claims are grounds for a new trial pursuant to Rule 33.

## CONCLUSION

For the reasons stated above, the Government respectfully requests that the Court deny the defendant's requests for a new trial pursuant to Rule 33 in the *pro se* sentencing submission filed on November 1, 2019 (Docket No. 760) and proceed to sentencing the defendant.

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney

By:   /s/ Andrew K. Chan
      Jessica Feinstein
      Allison Nichols
      Andrew K. Chan
      Assistant United States Attorney
      (212) 637-1946 / 2366 / 1072

Cc:   Counsel for Brandon Green
      Via ECF