1UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

- against -

BRANDON GREEN,

Defendant.

**ORDER**

(S5) 16 Cr. 281 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

On March 27, 2019 – after a five-week trial – a jury found Defendant Brandon Green guilty of (1) racketeering conspiracy, in violation of 18 U.S.C. § 1962(d) (Count One); (2) conspiring to distribute and possess with intent to distribute five kilograms or more of cocaine, 280 grams or more of cocaine base, one kilogram or more of heroin, and a quantity of marijuana, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A) and (D) (Count Four); and (3) using, carrying, and possessing a firearm during and in relation to, and in furtherance of, the narcotics conspiracy charged in Count Four, in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count Five).  (Verdict (Dkt. No. 570))

With respect to the racketeering conspiracy charged in Count One, the jury found that the Government had proven beyond a reasonable doubt that Green had participated in a pattern of racketeering activity that "involved the distribution of controlled substances, possession of controlled substances with the intent to distribute them, or conspiracy to distribute or possess with intent to distribute controlled substances."  (Id. at 3)  The jury's verdict was premised on Green's participation in the Blood Hound Brims, a Bloods gang engaged in large-scale narcotics trafficking and acts of violence.

On April 25, 2019, Green moved for a judgment of acquittal or a new trial, pursuant to Rules 29 and 33 of the Federal Rules of Criminal Procedure. (Green Post-Trial Mot. (Dkt. No. 639)) Green argued that his conviction on Count Five – the Section 924(c) charge – could not be sustained, because at trial the Government did not establish a nexus between the firearms Green had possessed and the charged narcotics conspiracy. Green also contended that, as a result of the Court's erroneous admission of firearms seized from his apartment, Green had been unfairly prejudiced. Green further contended that the evidence is insufficient to demonstrate that he entered into a conspiracy to distribute crack cocaine and marijuana. Finally, Green argued that the jury's finding that the charged racketeering conspiracy constitutes a "crime of violence" is based on insufficient evidence. (Green Post-Trial Mot. Br. (Dkt. No. 640))

This Court addressed Green's post-trial motions in a September 17, 2019 memorandum opinion and order. (See Mem. Op. & Order (Dkt. No. 743)) In light of United States v. Davis, 139 S. Ct. 2319 (2019), this Court granted Green's motion to vacate the jury's finding that the charged racketeering conspiracy – Count One of the S5 Indictment – constitutes a "crime of violence." (Mem. Op. & Order (Dkt. No. 743) at 57, 64) The Court denied Green's remaining post-trial motions. As to the Section 924(c) charge – Count Five of the S5 Indictment – the Court found that the Government had established a sufficient nexus between the six firearms recovered from Green's apartment and the charged narcotics conspiracy. The Court also found that the evidence was sufficient to demonstrate that Green had conspired to distribute both crack cocaine and marijuana. (Id. at 57-63)

In so holding, the Court cited (1) trial testimony from multiple cooperating witnesses – former longtime members of the Blood Hound Brims – demonstrating that Green was the gang's primary drug supplier, that he held a leadership position in the gang, and was

intimately involved in the gang's illegal activities; (2) evidence that Green had been previously arrested – in the company of another member of the Blood Hound Brims – with 29.5 grams of cocaine (Tr. 2838, 2845, 2864, 2884; GX 141); and (3) evidence that six loaded firearms, cash, and drug paraphernalia – including glassine envelopes commonly used to package heroin – were recovered from the apartment that Green shared with his girlfriend at the time of his arrest in 2017. (Tr. 746, 750-55; GX 109, 110, 112; Mem. Op. & Order (Dkt. No. 743) at 29-33, 56 n.35 59)

On July 25, 2019, at Green's request, Zoe Dolan replaced Eric Breslin and Melissa Geller as Green's counsel. Breslin and Geller had represented Green at trial. (See Order (Dkt. No. 705)) On September 23, 2019, Green moved for reconsideration of this Court's September 17, 2019 opinion and order. (Green Reconsideration Br. (Dkt. No. 746)) Green's reconsideration motion is directed solely to the racketeering conspiracy charged in Count One. Green argues that the jury's guilty verdict on Count One "hinged on the jury finding that the government had proven agreement on the commission of: (1) 'at least two predicate crimes that constitute a "crime of violence as the Court has defined the term,"' . . . and (2) the distribution or possession of, or conspiracy to distribute or possess with intent to distribute, controlled substances." (Id. at 3) Green contends that two notes issued by the jury during deliberations show that the jury misunderstood the elements necessary to sustain a conviction under Count One, and that the jury conflated the elements required under Count One with those necessary under Count Five. (Id. at 6-8) As discussed below, the jury notes cited by Green do not evince any jury confusion or misunderstanding. Accordingly, Green's motion for reconsideration will be denied.

**DISCUSSION**

I.  **LEGAL STANDARDS**

   A.  **Motions for Reconsideration**

"The decision to grant or deny a motion for reconsideration is within the sound discretion of the district court." Patterson v. United States, No. 04 Civ. 3170 (WHP), 2006 WL 2067036, at *1 (S.D.N.Y. July 26, 2006) (citing McCarthy v. Manson, 714 F.2d 234, 237 (2d Cir. 1983)).[1] To grant such a motion is an "extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." In re Health Mgmt. Sys. Inc. Sec. Litig., 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000) (citation omitted). "The major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992) (quotation marks and citation omitted).

   B.  **Rule 29 Standard**

As discussed in this Court's September 17, 2019 opinion and order (Mem. Op. & Order (Dkt. No. 743) at 34-35), in evaluating a Rule 29 sufficiency challenge to a conviction, the Court "'must view the evidence in the light most favorable to the government, crediting every inference that could have been drawn in the government's favor, and deferring to the jury's assessment of witness credibility and its assessment of the weight of the evidence.'" United States v. Coplan, 703 F.3d 46, 62 (2d Cir. 2012) (citation omitted); see also United States v.

---

[1] "The applicable standard for a reconsideration motion in a criminal case is the same as the civil standard under Rule 6.3 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York." United States v. Kerik, 615 F. Supp. 2d 256, 276 n.27 (S.D.N.Y. 2009).

Mariani, 725 F.2d 862, 865 (2d Cir. 1984) ("The court should not substitute its own determination of the credibility of witnesses, the weight of the evidence and the reasonable inferences to be drawn for that of the jury."). "So long as the inference is reasonable, 'it is the task of the jury, not the court, to choose among competing inferences.'" United States v. Kim, 435 F.3d 182, 184 (2d Cir. 2006) (citation omitted). The Second Circuit has observed that "[t]hese strict rules are necessary to avoid judicial usurpation of the jury function." Mariani, 725 F.2d at 865. Given this standard, "[a] defendant bears a 'very heavy burden' in challenging a conviction based on insufficient evidence." United States v. Goldstein, No. S2 01 Cr. 880 (WHP), 2003 WL 1961577, at *1 (S.D.N.Y. Apr. 28, 2003) (quoting United States v. Brewer, 36 F.3d 266, 268 (2d Cir. 1994)).

  C. **Rule 33 Standard**

    Under Rule 33, a court may "vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33. "Rule 33 confers broad discretion upon a trial court to set aside a jury verdict and order a new trial to avert a perceived miscarriage of justice." United States v. Sanchez, 969 F.2d 1409, 1413 (2d Cir. 1992). Courts may not only grant a Rule 33 motion where the evidence is legally insufficient, see United States v. Leslie, 103 F.3d 1093, 1100-01 (2d Cir. 1997), but also where a jury's verdict is contrary to the weight of the evidence, United States v. Ferguson, 246 F.3d 129, 136 (2d Cir. 2001) ("We cannot say that the district judge abused her discretion when she concluded that the weight of the evidence showed that [the defendant] was an outside hit man and not a [gang] member acting to further that membership."). In contrast to the analysis under Rule 29, a district court considering a Rule 33 motion need not view the evidence in the light most favorable to the Government. United States

5

v. Lopac, 411 F. Supp. 2d 350, 359 (S.D.N.Y. 2006) (citing United States v. Ferguson, 49 F. Supp. 2d 321, 323 (S.D.N.Y. 1999), aff'd, 246 F.3d 129 (2d Cir. 2001)).

Under Rule 33, "[i]n the exercise of its discretion, the court may weigh the evidence and credibility of witnesses." United States v. Autuori, 212 F.3d 105, 120 (2d Cir. 2000) (citing Sanchez, 969 F.2d at 1413). However, "[t]he district court must strike a balance between weighing the evidence and credibility of witnesses and not 'wholly usurp[ing]' the role of the jury." Ferguson, 246 F.3d at 133 (quoting Autuori, 212 F.3d at 120) (alteration in Ferguson). "Because the courts generally must defer to the jury's resolution of conflicting evidence and assessment of witness credibility, '[i]t is only where exceptional circumstances can be demonstrated that the trial judge may intrude upon the jury function of credibility assessment.'" Id. at 133-34 (quoting Sanchez, 969 F.2d at 1414). Such "exceptional circumstances" may exist "where testimony is 'patently incredible or defies physical realities.'" Id. at 134 (quoting Sanchez, 969 F.2d at 1414).

### D. Presumptions Regarding Jury Verdicts

In considering motions aimed at overturning a jury verdict, courts presume that that the jury followed the legal instructions delivered by the court. See Shannon v. United States, 512 U.S. 573, 585 (1994) ("[T]he almost invariable assumption of the law [is] that jurors follow their instructions." (citation omitted)); United States v. Ferguson, 676 F.3d 260, 292 (2d Cir. 2011) ("[J]uries are presumed to follow their instructions." (citation omitted)); United States v. Post, 950 F. Supp. 2d 519, 533 (S.D.N.Y. 2013) ("Just as juries are presumed to follow the instructions they are given, . . . they cannot be presumed to have found facts or elements of offenses they are not instructed to find[.]" (internal citations and emphasis omitted)); United States v. Sabir, 628 F. Supp. 2d 414, 424 n.9 ("It is well-settled that jurors are presumed to

follow the Court's instructions to them." (citing Britt v. Garcia, 457 F.3d 264, 272 (2d Cir. 2006) ("It is a fundamental proposition that a jury is presumed to follow the instructions of the trial judge." (citation omitted)))). "Similarly, a jury is presumed to understand a judge's answer to its question." Weeks v. Angelone, 528 U.S. 225, 234 (2000).

## II.     ANALYSIS

Green contends that two notes the jury sent out during deliberations demonstrate that the jury "conflated – if not misunderstood – the elements necessary to sustain a conviction under Count One with the elements required under Count Five." (Green Reconsideration Br. (Dkt. No. 746) at 7-8) "Because the jury instructions directed jurors to determine whether the pattern of racketeering activity that Mr. Green may have agreed to involved 'at least two predicate crimes that constitute a "crime of violence" as the Court has defined that term' – and because that definition incorporated reference to a generic offense by its nature – the verdict remains infirm under Davis." (Id. at 8 (emphasis omitted))

### A.     The Jury Notes at Issue and the Court's Response

The jury's first note contains two questions. The first question, and the Court's response, is set forth below:

> "Re paragraph 1, page 37, for charge one, fourth element, is it sufficient to only reference one category and two predicate acts to establish a pattern and meet legal requirement, or is it necessary to only prove one predicate from at least two categories to meet that requirement? For example, is one act of robbery and one act of narcotics sufficient to meet the requirement?"

(Tr. 3678)

The Court answered as follows:

With respect to the first question, "Is it sufficient to only reference one category and two predicate acts to establish a pattern and meet legal requirement?" the

answer to that is yes.  The pattern requirement could be satisfied based on proof beyond a reasonable doubt of two predicate acts falling into one category.

Second question: "Is it necessary to only prove one predicate from at least two categories to meet that requirement?"  The answer to that is, a pattern could be premised on proof beyond a reasonable doubt of a predicate act from two different categories.

(Tr. 3678-79)

The jury's second note, and the Court's response, are set forth below:

"[C]an [you] clarify second paragraph, page 47?  We do not see the question regarding physical force on the verdict sheet. Thank you."

(Tr. 3686-87)

The Court answered this question as follows:

[W]ith respect to page 47 of the jury instructions, I want to read that paragraph to you and then also direct your attention to another portion of the jury instructions and a portion of the verdict sheet.  So, on page 47, it reads, and I quote: "Finally, if you find a defendant guilty of Count One, you will be asked to indicate on the verdict form whether the predicate crimes involved a substantial risk that physical force might be used against the person or property of another.  Physical force means force capable of causing physical pain or injury to a person or injury to property.  You must agree unanimously on whether the answer to this question is yes or no."

Then on page 55 of the jury instructions – and just to orient you as to page 55 and where that is in terms of the jury instructions, page 55 is part of the instructions concerning the firearms count.  Use of a firearm in connection with racketeering and narcotics conspiracies is in that section of the instructions.  And in discussing the elements of that offense, the jury instructions read as follows on page 55:

"The first element that the government must prove beyond a reasonable doubt is that the defendant you are considering committed either a crime of violence or a drug-trafficking crime for which he might be prosecuted in a court of the United States.  A crime constitutes a crime of violence prosecutable in [a] court . . . of the United States if the offense by its nature involves a substantial risk that physical force might be used against the person or property of another.  Physical force means force capable of causing physical pain or injury to a person or injury to property.  In order to determine whether the racketeering conspiracy charged in Count One constitutes a crime of violence, you must look to the alleged predicate crimes and determine whether the government has proven beyond a reasonable doubt a pattern of racketeering that includes at least two predicate crimes that

8

constitute a crime of violence, as I have defined that term. If so, Count One constitutes a crime of violence; if not, count one does not constitute a crime of violence."

Then on the verdict sheet, page three, paragraph C, which is at the top of the page, there is the following question: "If you found the defendant guilty on Count One, please indicate whether the pattern of racketeering activity that the defendant agreed would be committed involved at least two predicate crimes that constitute a crime of violence, as the Court has defined that term."

So, that's how the jury instructions and the verdict sheet relate to each other for purposes of that question. Thank you very much. Please resume your deliberations.

(Tr. 3687-89)

### B. Whether the Jury Notes Evince Juror Confusion

Neither of the jury notes cited by Green evince juror confusion.

In the first note, the jury merely inquires – as to Count One, racketeering conspiracy – whether the Government is required to prove a predicate act from each category – murder, robbery, or controlled substance offenses – or whether a conviction could be premised on two predicate acts from the same category. To illustrate, the jury asks whether proof of an act of robbery and a narcotics offense would be sufficient. Consistent with governing law, see United States v. Applins, 637 F.3d 59, 81-82 (2d Cir. 2011) (collecting cases), the Court instructed the jury that two predicate acts from any category listed on the verdict sheet – whether murder, robbery, or narcotics offense – would suffice, or one predicate act from two categories. (Tr. 3629-30, 3641-42, 3678-79; see also Verdict (Dkt. No. 570) at 2-3)

In its second note, the jury asked for clarification concerning the reference to "physical force" on page 47 of the jury instructions. The jury sought clarification because – although page 47 of the instructions refers to "physical force" – the verdict form does not ask the jury to make a finding as to "physical force." (Tr. 3686)

9

As an initial matter, the Court's instructions on this point are moot in light of (1) the jury's verdict; and (2) United States v. Davis, 139 S. Ct. 2319 (2019), which was issued after the jury's verdict. The "crime of violence" question was included as to the racketeering conspiracy charge in Count One in order to permit a determination as to whether that count could serve as the predicate for a Section 924(c) conviction in Count Five. See United States v. Barrett, 903 F.3d 166 (2d Cir. 2018), abrogated by Davis, 139 S.Ct. 2319. The jury found, however, that the Government had not proven that Green possessed or used a firearm during and in relation to the racketeering conspiracy count. (Verdict (Dkt. No. 570) at 8) Moreover, even if the jury had found that Green possessed or used a firearm during and in relation to the racketeering conspiracy count, Davis would have required this Court to vacate that conviction. See Davis, 139 S. Ct. at 2336 (finding "residual clause" of Section 924(c) unconstitutionally vague).

In any event, as set forth above, the Court answered the jury's question by re-reading those portions of the charge that explain that "physical force" relates to whether the Government proved that Green agreed to a pattern of racketeering activity that involved at least two predicate offenses that constitute a "crime of violence."

The Court began by directing the jury's attention to page 47 of the jury instructions, reading the relevant paragraph:

> [W]ith respect to page 47 of the jury instructions, I want to read that paragraph to you and then also direct your attention to another portion of the jury instructions and a portion of the verdict sheet. So, on page 47, it reads, and I quote: "Finally, if you find a defendant guilty of Count One, you will be asked to indicate on the verdict form whether the predicate crimes involved a substantial risk that physical force might be used against the person or property of another. Physical force means force capable of causing physical pain or injury to a person or injury to property. You must agree unanimously on whether the answer to this question is yes or no."

(Tr. 3687)

The Court then linked the "physical force" language used on page 47 to the definition of "physical force" set forth on page 55 of the jury instructions, and explained that the jury could treat the racketeering count as a "crime of violence" only if it found that the Government had proven that the pattern of racketeering activity that Green had agreed would be committed involved at least two predicate offenses that constitute a "crime of violence":

> Then on page 55 of the jury instructions – and just to orient you as to page 55 and where that is in terms of the jury instructions, page 55 is part of the instructions concerning the firearms count. Use of a firearm in connection with racketeering and narcotics conspiracies is in that section of the instructions. And in discussing the elements of that offense, the jury instructions read as follows on page 55:
>
> "The first element that the government must prove beyond a reasonable doubt is that the defendant you are considering committed either a crime of violence or a drug-trafficking crime for which he might be prosecuted in a court of the United States. A crime constitutes a crime of violence prosecutable in [a] court . . . of the United States if the offense by its nature involves a substantial risk that physical force might be used against the person or property of another. Physical force means force capable of causing physical pain or injury to a person or injury to property. In order to determine whether the racketeering conspiracy charged in Count One constitutes a crime of violence, you must look to the alleged predicate crimes and determine whether the government has proven beyond a reasonable doubt a pattern of racketeering that includes at least two predicate crimes that constitute a crime of violence, as I have defined that term. If so, Count One constitutes a crime of violence; if not, Count One does not constitute a crime of violence."

(Tr. 3687-88)

The Court ended by directing the jury's attention to the portion of the verdict sheet (Verdict (Dkt. No. 570) at 3) that asks the jury "to indicate whether the pattern of racketeering activity that [Green] agreed would be committed involved at least two predicate crimes that constitute a 'crime of violence' as the Court has defined that term":

11

> Then on the verdict sheet, page three, paragraph C, which is at the top of the page, there is the following question: "If you found the defendant guilty on Count One, please indicate whether the pattern of racketeering activity that the defendant agreed would be committed involved at least two predicate crimes that constitute a crime of violence, as the Court has defined that term."
>
> So, that's how the jury instructions and the verdict sheet relate to each other for purposes of that question. Thank you very much. Please resume your deliberations.

(Tr. 3688-89)

Green appears to argue that the jury somehow understood that the two generic "crimes of violence" referenced in the jury instructions and the verdict sheet could constitute the two predicate acts necessary to find a pattern of racketeering for purposes of the racketeering conspiracy count. (Green Reconsideration Br. (Dkt. No. 746) at 8) This argument is not persuasive, because it is utterly inconsistent with the Court's jury instructions, which are crystal clear as to the nature of the two predicate acts that must be found to support a conviction on the racketeering conspiracy count. The jury was instructed that the

> [G]overnment must prove beyond a reasonable doubt . . . that the defendant you are considering knowingly conspired with at least one other person to participate in the conduct of the affairs of the enterprise through a pattern of racketeering activity. . . . A pattern of racketeering activity requires at least two related acts of racketeering committed by the defendant himself or a coconspirator within ten years of each other. These acts of racketeering are called 'predicate acts.'"

(Tr. 3626)

The Court further instructed the jury that the two acts the Government was required to prove were

> (a) [a]cts involving conspiracy to commit murder and attempted murder, in violation of New York State law; (b) [a]cts involving robbery, conspiracy to commit robbery, and attempted robbery, in violation of New York State law; (c) [a]cts involving robbery, conspiracy to commit robbery, and attempted robbery, in violation of federal law, commonly referred to as Hobbs Act robbery; and (d) [a]cts involving the distribution of controlled substances, including cocaine, cocaine base . . . , heroin, or marijuana, and conspiracy to commit and aiding and abetting of the same, in violation of federal law.

12

(Tr. 3629)  In sum, the jury instructions made very clear what predicate acts the Government was required to prove in order for the jury to convict on Count One, racketeering conspiracy.

As discussed above, later in the charge, the Court instructed the jury that "if you find . . . a defendant guilty of Count One, you will be asked to indicate on the verdict form whether the predicate crimes involved a substantial risk that physical force might be used against the person or property of another.  Physical force means force capable of causing physical pain or injury to a person or injury to property."  (Tr. 3642)  This instruction makes clear that the jury was only to reach the question of whether the predicate crimes involved a substantial risk that physical force might be used if the jury had already found the defendant guilty of Count One, and that a finding that physical force was used – and that a "crime of violence" was thus committed – was not a predicate act for finding the defendant guilty of Count One.  Similarly, the question on the verdict sheet that references "crime of violence" begins, "If you found the defendant 'Guilty' on Count One. . . ."  (Verdict (Dkt. No. 570) at 3)

Accordingly, there is no reasonable possibility that the jury could have understood that a conviction on the racketeering conspiracy count could be premised on two generic "crimes of violence."  Instead, the jury was clearly instructed that – in order to convict on Count One – it had to find that the pattern of racketeering that Green had agreed would be committed involved two or more of the charged predicates – whether murder, robbery, or controlled substance offenses.  (Tr. 3626, 3629)

As discussed above, it is well-settled that juries are presumed to follow the instructions they are given, see, e.g., Shannon, 512 U.S. at 585; Zafiro v. United States, 506 U.S. 534, 540-41 (1993), and are similarly presumed to have understood a judge's answer to a jury's

question.  Weeks, 528 U.S. at 234 (citing Armstrong v. Tolder, 11 Wheat. 258, 279 (1826)).  There is no basis here to find these presumptions inapplicable.

Finally, and as discussed in the Court's September 17, 2019 memorandum opinion and order, there was ample evidence at trial that Green had engaged in numerous acts of drug trafficking as part of his involvement with the Blood Hound Brims.  (Mem. Op. & Order (Dkt. No. 743) at 24-32, 61-63)  Indeed, Green concedes that there was "evidence that [he] had some involvement with cocaine."  (Green Br. (Dkt. No. 640) at 12)

That evidence included testimony from multiple former gang members that Green supplied cocaine to gang members for resale.  (Tr. 173, 346-47, 360-61, 367, 374)  The proof at trial also included evidence that in 2010, in the Bronx, officers of the New York City Police Department recovered nearly 30 grams of cocaine from Green's person.  (Tr. 2845, 2884; GX 141)  There was also evidence that Green had conspired to distribute and possess with intent to distribute marijuana.  (Mem. Op. & Order (Dkt. No. 743) at 62-63)  In sum, the jury's finding that Green had committed two or more predicate acts involving controlled substances offenses is fully supported by the evidence.

## **CONCLUSION**

For the reasons stated above, Defendant Green's September 23, 2019 motion for reconsideration of this Court's September 17, 2019 memorandum opinion & order – as it pertains to Count One – is denied. The Clerk of Court is directed to terminate the motion (Dkt. No. 746) and to mail a copy of this Order to Defendant Green.

Dated: New York, New York
June 29, 2021

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge