To: Hon. Judge Paul G. Gardpehe

40 Foley Square, New York, NY 10007


From: Brandon Green Reg. No 56400054

Petitioner/ Defendant, Pro Se


Date: 8/6/2021

Case: 1:16-cr-00281


## MR. GREEN'S REQUEST FOR A CERTIFICATE OF APPEALIBILITY


Defendant Green is requesting a certificate of appealability to appeal Judge Gardephe's denial of his recusal motion (See Dkt. Entry 1024).


Respectfully submitted,


Brandon Green #56400054

Petitioner/Defendant, Pro Se

To: Hon. Judge Paul G. Gardephe

40 Foley Square, New York NY 10007


From: Brandon Green

Petitioner/Defendant

------------------------------------------------X


Dist. Ct. Case No. 16 Cr. 281,

App. Ct. Case No.  (Unknown/Unassigned)


AFFIDAVIT OF FACTS IN SUPPORT OF MANDAMUS

PETITION; AND, EMERGENCY STAY REQUEST


I. Introduction


     I, Brandon Green, PRO SE, the PETITIONER / DEFENDANT in the above-listed Cause, Under Penalty of Perjury, DO HEREBY SWEAR to the following information to support the "Emergency Stay Request", and "Mandamus Petition" filed herewith:


II. Preliminary Statement


     Mr. Green is - and has been for nearly the last five (5) years - in a fight for his life and liberty; which have been "wrongfully" taken from him.  The fight has not been easy, either; and it definitely has not been fair.  Moreover, there has been a "complete breakdown" of the adversarial process in this case: Everyone who had a right, duty, and/or obligation to protect and/or defend Mr. Green's Constitutional rights, and the rights of our nations citizens, failed/neglected to do so here.  This includes Federal and State Officer(s) and Agent(s) (to include Prosecutors), Federal Court(s)/Judge(s), and even Mr. Green's own Attorney(s) (both paid and appointed).  These egregious violations of Mr. Green's rights have taken place at the hands of the same individuals who we entrust to protect and defend those same most basic and fundamental of rights.  The entire criminal justice system has once again systemically wrongfully convicted another African American minority male U.S. Citizen.  Now, the only hope Mr. Green has of vindicating these egregious violations of his most basic of rights is for the Second Circuit - and/or U.S. Supreme - Court to intervene.  Mr. Green's current sentencing date is scheduled for June 17, 2021, however, Mr. Green should not be sentenced to anything here in the first place because his

convictions were obtained in direct violation of the U.S. Constitution; and the Judge refused to address these constitutional concerns, after engaging in dilatory tactics , to some success , along with Mr. Green's previous attorney(s) and the Government, to discourage and moreover prevent Mr. Green from being provided a meaningful opportunity to be heard with respect to his IAC and other post-conviction claims relating to his wrongful conviction(s). Furthermore, the District Court Judge assigned to this Case, the Honorable Paul G. Gardephe (hereafter the "Judge"), "refuses" to recuse himself; and Mr. Green's current sentencing date is scheduled for June 17, 2021. This leaves Mr. Green only about one (1) week to seek review of the Judge's refusal to recuse. This IS NOT much time. Therefore, Mr. Green filed the accompanying "Emergency Stay Request", to seek an immediate Order Staying the District Court proceedings pending the Appellate Court's review of the accompanying meritorious Mandamus Petition. However, due to the limited time frame for which Mr. Green has to prepare these pleadings (i.e., the "Emergency Stay Request" and "Mandamus Petition"), he must now, more than ever, be as brief as possible: time is of the essence. Accordingly, Mr. Green will limit this Affidavit to the most essential of facts deemed necessary for an adequate understanding of the issues presented here: which is, primarily, whether the Judge abused his discretion by refusing to recuse himself, and allow for the appointment of another judge to hear the proceedings. Unfortunately, this is much easier said than done, especially considering the unusual circumstances of this Case, coupled with the seemingly innumerable amount of violations of rights that occurred at the hands of so many people.


III. A Note About the Unusual Circumstances of This Case


Those responsible for the dispensation of justice are regular human beings, prone to act as humans do. Moreover, albeit that these individuals are limited in their power by constraints imposed via the Constitution, such Constitutional - and other similar legal - constraints are meaningless absent an impartial tribunal willing to hold those responsible accountable. A fortiori, there can be absolutely no justice when the courts are directly involved in the violations of an individual's rights; and / or, when the entire system fails i.e., when there is a complete breakdown in the healthy administration of justice. Such an example would be when everyone, the Courts, the Prosecution, and even the defense attorney(s), all fail to perform their respective duties within the bounds of the law--and that is exactly what took place here, and Mr. Green can prove this. That is what makes this case so unusual.

There is a whole lot going on in this case. There's been a complete breakdown in the adversarial system. Needless to say, this is a very unusual case; which is something that Mr. Green feels he needs to make known to the Second Circuit (and anyone else reading this). Moreover, Mr. Green hopes that by explaining this, that the Second Circuit will be in a better position to understand the issues being presented, as well as what is the appropriate relief to grant him here.

The first thing that Mr. Green would like to point out is that although this Affidavit of Facts is primarily being filed in support of a Mandamus Petition to review a District Court Judges refusal to recuse, it mentions a lot more people than just the District Court Judge, and also discusses several other issues (e.g., prosecutorial misconduct, and ineffective assistance of counsel). Moreover, this is because - as Mr. Green just previously stated - there has been a complete breakdown in the adversarial process here. And this is something that Mr. Green can prove; if it has not already been made apparent to the

Second Circuit through its own review of the record--which would not surprise Mr. Green, on account that everyone else thus far who has looked at this Case has had the same basic responses, for example: "Your case has a torrid procedural history and it is clear to me that you were not treated within the bounds of the proper and lawful administration of justice". Quoting Statements Made to Mr. Green by Isaac Wright, in and email dated: January 2, 2021 (Issac Wright is running for mayor of New York, has a television show, and is famous for his own triumphs through the face of adversary in our Country's justice system); also, Babe Howell, a Law Professor and Columbia College University, in an email to Mr. Green dated September 9, 2019, stated about this Case: "I'm somewhat familiar with this particular case and have been reading some of the transcripts with GREAT CONCERN". Quoting Babe Howell, Law Professor at Columbia University College.

With this in mind, however, Mr. Green would like to point out that all of these issues, with all of these individuals, do one way or another tie into Mr. Green's issues and arguments surrounding the Judge's refusal to recuse himself here: Everything is an example - made manifest - of that breakdown, which has come about and moreover been allowed to take place due to, among other things, a bias, partial, and prejudice tribunal.

Furthermore, there really is so many issues in this case, that Mr. Green does not have time to list them all. This is something that has been made apparent to him throughout his attempts to draft this Affidavit and accompanying pleadings. Instead, what Mr. Green has done is limit this information to the more egregious and more clearer examples of the violations supporting the issues and arguments raised in these pleadings; and to the most essential of facts deemed necessary for an adequate understanding of the issues presented here. This makes this Affidavit something that this Court of Appeals can effectively use.

Therefore, considering the unique circumstances of this most unusual case, Mr. Green asks that those reading this Affidavit - and the accompanying documents - please be understanding of the difficulties faced by him in drafting such: This has not been an easy task, especially in light of the pressure placed on Mr. Green throughout all of this.

## IV. A Note About the Docket

Also, before going any further, Mr. Green would like to briefly discuss the Docket for this Case. The first thing Mr. Green would like to mention regarding this is that he knows that he has filed several documents, and many of those same documents have been filed more than once. Moreover, this is because Mr. Green has had to be extraordinarily diligent in his efforts to bring to light, address, and remedy the violations of his rights that have taken place here; to include his having to take any and all measures necessary to ensure that his court submissions are accurately and timely filed in the Docket for this case. Furthermore, when Mr. Green first began sending documents to the District Court, there was issues with those documents not being filed; therefore, this prompted Mr. Green to have to do things like, in addition to mailing the documents in himself, also have his family and loved ones mail them and even also hand deliver them to the District Court. Hence there are multiple filings of the same documents in the Docket here. However, please be sure to note that Mr. Green has had to file

complaints with the Clerk of the District Court regarding his Court submissions not being accurately and moreover timely filed; therefore, he feels that such diligence on his part is necessary here. (See Docket No(s). 833, 928 (both written complaints by Mr. Green to the Clerk of the District Court regarding his court submissions and more over the handling of the Docket for this case).

Next, Mr. Green would like to point out that he is not the only person to have something to say about the Docket for this Case, and the other defendants associated with the same; for instance, here is a statement made by Inner City Pres (an online media outlet) about this:

"The sentencing on September 12, 2019 was not listed in PACER. Even figuring out the docket number . . ., six filings in a row are sealed. The only way for the public to learn of this deal by the U.S. Attorney was to show up in the courtroom.  But a half dozen times so far, Inner City Press has been ordered out of sentencings.  And questions have not been answered."

Quoting Statements Made by Inner City Press, Online Media, on September 12, 2019 (regarding the sentencing and a plea deal of one of the Government's many cooperating witnesses).  And, it's not just the Docket either, but all aspects dealing with the documentation of evidence and other case information.  Mr. Green's discovery was even sent to the wrong jail, and it's taken him nearly five (5) years to receive much of his Case information (as the Second Circuit will read about more herein).

V. Some Relevant Facts and Background Information

1. On and around February 26, 2021, the District Court filed Mr. Green's Affidavit(s) and Motion(s) to Recuse, and other similar related pleadings and papers (hereafter "collectively" referred to as the "Recusal Papers") seeking, inter alia, to recuse the Judge (see Docket No(s). 955, 956, 963, 965-67);

2. Mr. Green filed the Recusal Papers because he felt that the Judge was bias, prejudice, and moreover partial against him; and that he would not receive a fair hearing before the Judge;

3. Mr. Green also sought recusal because the Judge violated - and continues to violate - his Constitutional and Human Rights, as well as the Judicial Canons, in several respects;

4. An example of this was the Judges statements, actions, and behaviors that took place during a telephonic / electronic conference held in this matter on January 5, 2021 (hereafter the "January 5 Conference"); where the Judge threatened to deny Mr. Green of his right to be heard, and then actually deprived him of this, and other rights, by disconnecting the line during the conference while Mr. Green was speaking;

5.  Moreover, just a couple of weeks prior to the January 5 Conference, the attorney, Steven Witzel, who had recently been appointed as Shadow/Stand-by Counsel for Mr. Green, told Mr. Green that: "You know, Paul (referring to the Judge) is not too fond of you (referring to Mr. Green) [1];

6.  This statement by Mr. Witzel was made during a telephone conference - that took place in or around the second week of December, 2020 - between Mr. Green, and Mr. Witzel and his colleagues; and it was the first time Mr. Green personally spoke to Mr. Witzel, and these other individuals (Mr. Witzel's colleagues) since Mr. Witzel's then recent appointment as Shadow/Stand-by Counsel;

7.  Mr. Witzel was officially appointed/assigned to this Case - under the Criminal Justice Act (CJA) - on or about December 20, 2020 (See Docket No. 912); moreover, he was appointed as Shadow/Stand-by Counsel for Mr. Green, who was given Pro Se status on or about November 17, 2020;

8.  Furthermore, Mr. Green had elected to proceed Pro Se after he had to have every attorney thus far relieved from his case after, inter alia, he caught those attorneys in lies, and, moreover, discovered that they were not performing their jobs effectively (in a Constitutional sense);

9.  Before Mr. Green elected to proceed Pro Se, he had approximately four (4) different lawyers working on his case (not all at the same time though); however, they all had to be relieved;

10.  The first attorney Mr. Green had was Susan Walsh;

11.  Mr. Green had Ms. Walsh relieved primarily because she appeared to be more concerned with trying to help the Government convince Mr. Green to cooperate/testify against Latique Johnson (the head of the Indictment for this case); and this was not the direction that Mr. Green wanted to go with this case. Specifically, Mr. Green maintained to Ms. Walsh, and every attorney after her, that he was innocent, and moreover, had nothing to offer because he did not know these people (the other alleged co-defendants) all that well;

12.  Ms. Walsh responded by informing Mr. Green that the Government was not after him, and that it was Mr. Johnson that they were after; and, instead of attacking the false charges / illegal prosecution,

---

[1] According to the Judge, he and Mr. Witzel know each other; they "worked together in the U.S. Attorney's Office many years ago."  Quoting Statements made by Judge at a Telephonic/Electronic Conference held in this Matter on December 8, 2020 (hereafter the "December 8 Conference") (See December 8 Conference Transcript (hereafter "Dec. 8 Conf. Tr."), Pg. 2, Lines ("LL") 14-19.

Ms. Walsh only appeared interested in helping the Government use their false case against him as leverage to try and get him to cooperate/testify against - primarily- Mr. Johnson;

13. Mr. Green could see that Ms. Walsh was not up for the challenge of defending, protecting, and moreover vindicating his rights; so, Mr. Green moved the Court to have her relieved;

14. On or about December 20, 2017, Ms. Walsh was replaced by the attorneys, Eric R. Breslin, and Melissa S. Geller, both from the Law Firm of Duane Morris (hereafter collectively referred to as "Trial Counsel", unless otherwise referenced individually by their respective names);

15. Upon Trial Counsels appointment to this Case, Mr. Green informed them of everything he told Ms. Walsh: i.e., that he was innocent of all charges, the Government had fabricated a case against him, and, moreover, that he did not have anything to offer, and moreover did not wish to cooperate/assist the Government in any way;

16. Trial Counsels response was basically the same as Ms. Walsh: Trial Counsel informed Mr. Green that it was not him that the Government was after, but Mr. Johnson, and, that he just happened to be collateral damage in their witch-hunt for Mr. Johnson;

17. Moreover, Trial Counsel tried, without success, on several occasions to talk Mr. Green into cooperating for the Government by testifying against, inter alias, Mr. Johnson; however, their efforts were in vain;

18. Mr. Green continued to have problems with Trial Counsel throughout the course of their assignment on this case; and this eventually led to him having to file complaints with, inter alios, the District Court, and to eventually having Trial Counsel relieved from his case;

19. Furthermore, during the time of Trial Counsels assignment to this case, Mr. Green still was in the process of learning - on his own - about his rights (Constitutional and other), and moreover, his responsibilities with respect to those rights--needless to say, Mr. Green was still a bit naive when Trial Counsel was first appointed: Mr. Green still actually kind of believed that his attorneys actually had his best interest; thankfully, however, the veil has been completely removed from his eyes;

20. Mr. Green felt in his gut that something was wrong with Trial Counsel; he really knew deep down inside that something was not right here, and his suspicions began to be confirmed as time went on, and

Case 1:16-cr-00281-PGG   Document 1067   Filed 08/16/21   Page 8 of 58

he caught Trial Counsel in more and more lies--consequently, he - and his family - decided that it would be in his best interest to hire another attorney for the purposes of sentencing and appeal, and, moreover, to review, inter alia, what Trial Counsel had done thus far for Mr. Green (e.g., Trial Counsels Rule 29/33 Post-Trial Submissions), and to help amend/supplement such to incorporate any and all meritorious issues that Mr. Green wanted and requested Trial Counsel to argue, but which was not done by them, and or, was not done correctly;

21. An example of one of the many lies Trial Counsel told Mr. Green is that: "There is no such thing as a Stay", Quoting Trial Counsels Statements to Mr. Green in email; moreover, this was in response to Mr. Green asking Trial Counsel to move the District Court for a Stay in the proceedings so that Trial Counsel could incorporate several meritorious arguments not raised by Trial Counsel in their Post-Trial Submissions (Mr. Green can produce this email to the Second Circuit if needed);

22. Moreover, it was not just Trial Counsel that Mr. Green complained to about their failure to incorporate his arguments; he also caused to be sent to the Judge several pleadings raising myriad concerns from ineffective assistance of counsel (IAC), to prosecutorial/government misconduct and similar malfeasance;

23. One of the first written submission sent to the Judge by Mr. Green discussing his grievances regarding this case, and moreover Trial Counsels performance, was titled: "[A]mended [D]eclaration In Support of Rule 29, [and] 33 [M]otion", dated: 5-23-2019 (May 23, 2019) (hereafter the "Supplemental Declaration");

24. The Supplemental Declaration was filed by Mr. Green in an attempt by him to bring to light some of his many grievances and other similar concerns, in hopes that such could be addressed and moreover remedied by the District Court;

25. Around this time (i.e., around the time of the filing of the Supplemental Declaration) Mr. Green was still naive to the true nature and extent of the violations of his rights that were taking place in the District Court; the veil had not yet been "completely" lifted from his eyes;

26. At this time, Mr. Green still felt that if he put the District Court on Notice of what was taking place - i.e., that Trial Counsel was not performing their duties within the bounds of the Constitution, and, that the Government had committed several crimes -, the Judge would do the right thing, and address and remedy these grievances--oh how he was wrong;

27. Among his complaints, Mr. Green apprised the Judge - in the Supplemental Declaration - that his Trial Counsel had, inter alia, failed to incorporate his arguments in their Post-Trial Submissions;

28. The thing was, Mr. Green had been informing Trial Counsel, since before, during, and after trial, that he wanted them to go over with him their court filings, and moreover the arguments and issues raised therein, prior to their submitting such to the court, so that Mr. Green could ensure that his input was received, and all his meritorious issues and arguments were incorporated as necessary into such; however, Trial Counsel failed and often refused to do so (proof of this via an email between Mr. Green and Trial Counsel can be provided if needed) ;

29. Not only did Mr. Green inform the Judge, in the Supplemental Declaration, of Trial Counsel's failures to incorporate his issues and arguments in their Post-Trial Submissions, but he also complained to the Judge therein about Trial Counsels allowing the Government to use at trial against him alleged evidence (purportedly some cocaine) and testimony (from the arresting officer), allegedly obtained from a traffic stop that took place on August 3, 2010 (hereafter the "Traffic Stop"). See Supplemental Declaration, Pg. 6, Paragraph ("Para.") 2;

30. The Supplemental Declaration was filed by the District Court on June 18, 2019 (06/18/2019) (See Docket No. 665);

31. During and around this time, Mr. Green continued to discover more and more failings of Trial Counsel; and he began to encounter more and more resistance by Trial Counsel the more he requested that Trial Counsel rectify their failings;

32. For example, Mr. Green was not satisfied with Trial Counsels draft/proposed Rule(s) 29 and 33 Motions (their Post-Trial Submissions), and he asked Trial Counsel to move the District Court to Stay the proceedings, so that they could go over and correct the issues with their not including Mr. Green's meritorious arguments in their Post-Trial Submissions; and, in response, Trial Counsel informed Mr. Green that: "There is no such thing as a Stay", and, that "No one is giving you a Stay". Quoting statements made to Mr. Green by Trial Counsel, via email(s) (Mr. Green can provide the Second Circuit with these emails);

33. Needless to say, Mr. Green soon discovered that there in fact was such a thing as a Stay: See, i.e., Black's Law Dictionary, (5th Pocket Edition), defining the noun "Stay" as: 1. The postponement or halting of a proceeding, judgment, or the like. 2. An order to suspend all or part of a judicial proceeding or a judgment resulting from that proceeding. Quoting Id. at Pg. 742;

34. Moreover, Mr. Green requested Trial Counsel Stay the District Court proceedings because, for the most part, he was not satisfied with Trial Counsel's Post-Trial Submissions, and he requested that they meet with him, as he initially requested, to go over with him the issues and arguments that he wanted raised therein; furthermore, Trial Counsel, at this time, was informing Mr. Green that the District Court had set deadlines for them to file their Sentencing Submissions (i.e., Pre-Sentence Memorandum, and Objections to the Pre-Sentence Investigation Report (PSR) (filed by the Probation Department));

35. Therefore, Mr. Green asked Trial Counsel to move the District Court for a Stay of the proceedings so that they could first address and remedy his aforementioned grievances regarding their Post-Trial Submissions, before moving forward to address anything else (e.g., the Objections to the PSR); however, as stated earlier, Trial Counsel lied to Mr. Green by telling him that there was no such thing as a stay, and, that no one was giving Mr. Green a Stay;

36. It was becoming more and more clear to Mr. Green, as time went on, that Trial Counsel was and had been untruthful to him regarding a whole lot more than just simply saying that there was no such thing as a Stay; and, that no one was giving him one;

37. Trial Counsel refused to do as requested by Mr. Green, so, he and his family decided that it would be in his best interest to have Trial Counsel relieved from further representing him in this matter; also, they decided that it would be best to retain the services of another lawyer for him--so, that is what they did;

38. To replace Trial Counsel, Mr. Green's family hired the attorney, Zoe Dolan, from California; and she submitted a "Proposed Substitution of Counsel" request to the District Court in this matter on or about July 23, 2019 (See Docket No. 693, filed, 07/23/2019, re: Proposed Substitution of Counsel letter addressed to Judge Gardephe, from attorney Zoe Dolan);

39. Around this same time, Mr. Green caused to be sent to the District Court Judge several filings regarding his complaints with respect to Trial Counsels performance, and moreover, making clear his desire to ensure that these issues are addressed (see Docket No. 696, filed 07/24/2019, letter to Judge from Mr. Green; and, Docket No(s). 699, 701, Pro Se Motion for Stay and Continuance, submitted by Mr. Green, both filed, 07/24/2019);

40. On or about July 25, 2019, the District Court held a Substitution of Counsel hearing (hereafter the "July 25 Substitution Hearing"), and Granted Mr. Green's request that attorney Zoe Dolan replace attorney(s) Eric Breslin, and Melissa Geller, as counsel in this matter (see Docket No. 705, entered: 07/25/2019);

41. Moreover, at the July 25 Substitution Hearing, the Judge tried to talk Mr. Green out of (discourage him from) replacing Trial Counsel with Ms. Dolan; and, the Judge even went so far as to state:

THE COURT:  ... . I will say that I think Mr. Breslin and Ms. Geller performed ADMIRABLY throughout their ENTIRE REPRESENTATION of Mr. Green, both in terms of their IN-COURT PERFORMANCE as well as their WRITTEN MATERIALS.  SO, I THINK THAT MR. GREEN HAS BEEN THE BENEFICIARY OF EXCELLENT REPRESENTATION UP TO NOW.

Transcript of July 25 Substitution Hearing, Pg(s). 5-6 (Emphasis Added);

42. Approximately three (3) months after receiving and filing the Supplemental Declaration, and about two (2) months after receiving and filing Mr. Green's other Pro Se submissions (e.g., Motion for Stay and Continuance, and letter to Judge), the Judge issued a Memorandum Opinion and Order regarding his ruling on the Post-Trial Submissions of Mr. Green's Trial Counsel, inter alios.  See United States v. Green, et al., 2019 U.S. Dist. LEXIS 160088 (S.D.N.Y. 2019) (Decided September 16, 2019, and filed September 17, 2019);

43. The only effort made by the District Court Judge to address the aforementioned Pro Se filing(s) was a brief statement made by the Judge, in a footnote, in the Memorandum Opinion; to-wit: "In addition to the papers filed by ... counsel, ... [Mr.] Green ... made [a] [P]ro [S]e submission[] supporting the[] Rule 29 and 33 [M]otions (see Green Am. Decl. (Dkt. No., 665))... .The Court has considered the[] [P]ro [S]e filing[] - much of which echo arguments about witness credibility made by Defendant[']s[] counsel - and concludes that they are without merit." Quoting and Paraphrasing Judge's Memorandum Opinion and Order, Footnote 3 (Ellipses and Interpolation Added);

44. In the Memorandum Opinion, the Judge neglects to mention at all Mr. Green's other arguments raised in, among other documents, the Supplemental Declaration, relating to IAC and prosecutorial / government misconduct;

45. Moreover, in the Memorandum Opinion, the Judge completely failed to address / ignored all of Mr. Green's other Pro Se submissions, and moreover, the issues and arguments addressed therein (i.e., the Motion for Stay / Continuance, and letters to the Judge submitted by Mr. Green, See Docket No(s). 696, 699, 701)(filed on or about 07/24/2019);

46. Furthermore, in another footnote in the Memorandum Opinion, the Judge states regarding Trial Counsels Post-Trial Submissions, that: "Green says nothing in his brief about the evidence concerning his involvement in heroin trafficking". Quoting footnote 38, Memorandum Opinion. However, Mr. Green submits that he himself did challenge such in his Pro Se submissions, and, that the Judge's statements here actually give credence to his complaints that Trial Counsel failed to meet with him, and incorporate his issues and arguments in their written submissions (had they met with him prior to filing their Post-Trial Submissions, Mr. Green would have made sure that they argued, inter alia, against the evidence regarding the alleged heroin trafficking, and his alleged involvement in such);

47. Prior to, during, and after the Judge issued the Memorandum Opinion, Mr. Green had informed Ms. Dolan of his issues relating to IAC, and Government misconduct, among other things, that he wanted raised before the District Court either in a post-trial Rule 29 and 33 motion, or by whatever means necessary; moreover, Mr. Green submits that he vehemently maintained to Ms. Dolan that he wanted these issues brought to the District Court's attention prior to sentencing;

48. In response to these requests, which were made in person, in writing, and over the phone, Ms. Dolan informed Mr. Green that his issues relating to ineffective assistance of counsel against Trial Counsel, and, his issues regarding Government misconduct, were all best suited for a 2255, not a Rule 29 and 33 Motion (Ms. Dolan stated this to Mr. Green in several emails, which he can produce to the Second Circuit if needed);

49. Needless to say, Mr. Green later discovered that this advice from Ms. Dolan was incorrect; and that his issues relating to, inter alia, IAC and Government misconduct could, and in this Case should, be raised before the District Court and addressed before sentencing. See United States v. Brown, 623 F. 3d 104 (2d Cir. 2010);

50. What Mr. Green ended up doing, after he realized that Ms. Dolan was not going to raise the issues and arguments that he wanted, was submitting these arguments himself to the District Court in a Pro Se Sentencing Submission that he wrote;

51. The Pro Se Sentencing Memorandum was received by the District Court on or about October 30, 2019, a day before Mr. Green's then scheduled sentencing; and it was filed on or about October 30, 2019 (see Docket No. 760) (hereafter the "Sentencing Submission");

52. On October 31, 2019, at the Sentencing Hearing, the Judge stated, regarding its receipt of the Sentencing Memorandum, that:

THE COURT:  Good afternoon.  This matter was on my calendar for the purposes of sentencing. Yesterday afternoon I received a[] ... letter from Mr. Green in which he raises a wide variety of legal and factual complaints about his trial and his lawyer's performance at that trial. These arguments ARE DIFFERENT from arguments that were made in Mr. Green's first set of pretrial motions.  They are also different than arguments that Ms. Dolan made in a second series of post-trial motions. Based on that fact, I adjourned the sentencing.

Transcript of October 31 Sentencing Hearing (hereafter "Oct. 31 Sent. Tr.") Pg. 2, LL 9-19 (Emphasis Added);

53.  Contrary to the Judge's contentions, the claims raised by Mr. Green in the Sentencing Memorandum were not all that entirely different from his claims raised in previous court submissions; in fact, many of these same claims raised in the Sentencing Memorandum were raised by Mr. Green in his Supplemental Declaration filed several months earlier;

54.  Moreover, the only real difference between the claims raised in Mr. Green's Sentencing Memorandum, versus those raised in earlier submissions, is that the Sentencing Memorandum claims were articulated better--other than that, they were essentially the same claims / issues;

55.  At the Sentencing Hearing the Judge had Ms. Dolan question Mr. Green nearly fifteen (15) times as to whether he wished to pursue forward with filing his Sentencing Memorandum, and being heard on the IAC and other claims raised therein;

56.  Each and every time, Ms. Dolan unequivocally informed the Judge that Mr. Green was adamant about his request to be heard on those claims.  See, e.g., Oct. 31 Sent. Tr. Pg. __, LL 6-7 (where Ms. Dolan informed the Judge regarding Mr. Green's desire to pursue his Sentencing Memorandum claims that she "consulted with Mr. Green, and he affirms that he wished to press those issues.");

57.  Furthermore, it appears from review of the Judge's statements, at the October 31 Sentencing Hearing, that the Judge felt that with all that had transpired in Mr. Green's Case up to that point, i.e., with Mr. Green raising arguments of ineffective assistance of counsel, and having said counsel removed from his Case - the Judge had to treat Mr. Green's Pro Se Sentencing Memorandum as a Rule 29 and Rule 33 Motion, arguing ineffective assistance of counsel, among other arguments;

58.  In fact, at the Sentencing Hearing, the Judge stated, in regard to the Sentencing Memorandum, that:

THE COURT: ... So, my concern is that I now have a Rule 29 and a Rule 33 motion pending before me. A defendant has already raised claims of ineffective assistance of counsel, because there's been a change of counsel. Ms. Dolan has come in to represent Mr. Green in place of Mr. Breslin and Ms. Geller, who represented him at trial. So, it is unusual, the situation we find ourselves in. I haven't researched the matter, but my gut instinct is that it would BEHOOVE ME TO EXPLORE THE CLAIMS OF INEFFECTIVE ASSISTANCE NOW, given that THEY'RE ALREADY BEFORE ME...

Oct. 31 Sent. Tr. Pg. 9, LL 5-15 (Emphasis Added); and, similarly, a few pages later the Judge states:

. . . .

THE COURT: This is an unusual situation. I haven't encountered it before. Generally speaking, the defendant is represented by the same lawyer at sentencing that represented him at trial. Oftentimes that lawyer continues through appeal, but the point is we are in an unusual setting because Mr. Green terminated the services of his trial counsel, brought someone else in for sentencing purposes, and so the issue of ineffective assistance IS TEED UP NOW. To me it seems that the appropriate thing for me to do, rather than having to come back to me as a 2255, is to hold a hearing now on these allegations of ineffective assistance and make a ruling on those issues now.

Id. at Pg. 12, LL 12-23 (Emphasis Added).

59. After the October 31, 2019 Sentencing Hearing, for approximately one (1) year, Mr. Green and Ms. Dolan both wrote the Judge on numerous occasions, informing him of Mr. Green's affirmative desire to be heard regarding his post-conviction sentencing memorandum claims, and of his desire to proceed pro se with respect to the same. (See, e.g., Docket No(s). 767, 774, 775, 777, 782, 852, 883 (letters from both Mr. Green and Ms. Dolan to the Judge, stating these things));

60. Finally, after a little over one year after the October 31, 2019 Sentencing Hearing, on November 17, 2020, the District Court held a conference in this matter; the purpose of which the Judge stated:

THE COURT: ... . . .Turning now to the purpose of today's conference, the purpose is to resolve issues surrounding defendant Brandon Green's representation in connection with post-trial matters and sentencing.

November 17, 2020 Conference Transcript (hereafter "Nov. 17 Conf. Tr.") Pg. 3, LL 22-25;

61. Present on the November 17 telephonic conference was Mr. Green, Ms. Dolan, and the Government;

62. After some discussion between Ms. Dolan, Mr. Green, and the District Court, the Judge granted Mr. Green's request to have Ms. Dolan relieved from further representing him in this matter;

63. The Judge went on to discuss with Mr. Green his choices regarding representation; i.e., that he could have the Court appoint him counsel under the Criminal Justice Act (CJA), and, that he also had a right to represent himself (proceed Pro Se);

64. For the most part, the Judge strongly cautioned Mr. Green on the dangers of self-representation, stating, inter alia, that:

THE COURT: .... . . .I do not recommend that you try to represent yourself pro se going forward.  I STRONGLY URGE YOU DO NOT DO THAT.  You face a very lengthy sentence here... .

Nov. 17 Conf. Tr. Pg. 14, LL 13-15 (Emphasis Added); and:

" . . . . What I'm trying to emphasize to you, and let me  just say it again, is you're peril here.  You face an enormous sentence, and your lawyer is your advocate ... , And do you have a right to proceed pro se? Yes. But it would be reckless to do that in your circumstances, given the jeopardy you are in."

Id. at Pg. 20, LL 6-12.

65. The Judge and Mr. Green went back and forth on the issue of appointing an attorney under the CJA to assist Mr. Green, or deciding whether Mr. Green would proceed Pro Se. See Nov. 17 Conf. Tr. Pg(s) 20-43);

66. In the end, Mr. Green stated that he would like to proceed Pro Se, with the assistance of Co-Counsel; and that is what the District Court did:

THE COURT: ... So we will proceed with having counsel appointed to represent Mr. Green.  It will be a hybrid representation in the sense that Mr. Green will make the arguments that he wants to make, but he will do so with the advice and counsel of the lawyer who is going to be appointed to represent him.

Nov. 17 Conf. Tr. Pg. 43, LL 5-10;

67.  The Judge then went on to state, inter alia, that:

THE COURT: ...I would ask the government to arrange for CJA counsel to be appointed for Mr. Green, and once that is done, I will schedule another conference so that I can discuss with Mr. Green and his new lawyer how they wish to proceed. ... .

Id. at LL 17-20;

68.  Mr. Green and the Judge then discuss some concerns that Mr. Green has been having with respect to his not receiving necessary case documents, to include his Client File from Trial Counsel and Mr. Green informs the Judge that he feels as though he is being forced into prematurely addressing his post-conviction IAC and other claims, and that he moreover is intentionally not being given the information / documents that he has and continues to request from, inter alios, the District Court, the Government, and Mr. Green's previous attorneys;

69.  In response to this the Judge states, inter alia, that:

THE COURT: ...So you will not be sentenced.  There is a stay in effect with respect to your sentencing.  We will be moving forward on other fronts, however, as I indicated.  You have raised claims of ineffective assistance of counsel against Mr. Breslin, Ms. Geller, and Ms. Dolan, and we will be proceeding on your claims. You will be asked to sign an affidavit, in which you waive the attorney-client privilege for purposes of your ineffective assistance of counsel claims against your former lawyers; so we will be moving forward on that.

Id. at Pg. 46, LL 7-16;

70. After the November 17 Conference, the Judge entered an Order in the Docket (Docket No. 906, entered: 11/17/2020), stating, inter alia, that a status conference would be held in this matter on December 1, 2020;

71. Just a couple of days after the November 17, 2020 Conference, and moreover before CJA was Officially appointed to Mr. Green's Case as discussed by the Judge, supra, the Judge issued an Order dispositive of Mr. Green's IAC and other post-conviction claims; moreover, this Order, Docket No. 907, entered November 19, 2020 (hereafter the "Nov. 19 Order"), stated that:

" ... District courts have the discretion to consider ineffective assistance of counsel claims prior to the entry of judgment.  Accordingly, in order to proceed with his ineffective assistance of counsel claims, Defendant Green must execute the accompanying "Attorney-Client Privilege Waiver (Informed Consent)" form. Defendant Green is also directed to set forth his allegations concerning Breslin, Geller, and Dolan's advice and conduct in the form of an affidavit.  BOTH THE WAIVER FORM and THE AFFIDAVIT MUST BE SUBMITTED to this Court NO LATER THAN DECEMBER 9, 2020."

Paraphrasing Nov. 19 Order (Docket No. 907) (Emphasis Added);

72. About one (1) week after the November 17 Conference, the Judge Ordered that the status conference previously scheduled for December 1, 2020, be adjourned to December 8, 2020 (see Docket Entry 910, entered: 11/23/2020);

73. A few weeks after the Judge issues the Nov. 19 Order, Mr. Green sent the Judge a letter, dated December 4, 2020 (hereafter the "Dec. 4 Letter");

74. In the Dec. 4 Letter, titled: "Request for Additional Time to Submit Affidavit", Mr. Green informed the Judge that he still had not received the Judge's Nov. 19 Order, nor the accompanying Attorney-Client Privilege Waiver Form (hereafter the "Waiver Form");

75. Moreover, in the Dec. 4 Letter, Mr. Green updated the Judge on the status of the Affidavit of Facts supporting his post-conviction IAC and other claims; specifically, Mr. Green stated therein that:

"As it relates to the Affidavit, I'd like for this Court to be aware that the facts that I am required to submit therein span the course of several years (nearly 4 years) and deals with several attorneys who

have worked on this case. It has and will take some time for me to adequately research the facts to submit in this Affidavit."

Quoting Dec. 4 Letter;

76. Mr. Green then went on to state therein that:

"Therefore, in order to ensure that I am given an adequate opportunity to be heard, I respectfully request this Court provide me with additional time to complete and [s]ubmit the Affidavit and Attorney-Client Privilege Waiver form. Also, I'd like to point out to this Court that the Court recently issued me a STAY, and I'm not sure if this applies to the Affidavit[(s)] here. Clarification on this issue would be appreciated."

Quoting Id. (Emphasis and Interpolation Added);

77. The Dec. 4 Letter was sent to the District Court certified mail on or about December 4, 2020; therefore, Mr. Green has proof that the District Court received this letter;

78. On December 8, 2020, the District Court held a conference (hereafter the "December 8 Conference") in this matter; to follow up on its previous conference held a few weeks prior (the November 17 Conference);

79. It was at the December 8 Conference that Mr. Green was finally appointed CJA Counsel (see Docket No. 912), to assist him with, inter alia, bringing to light and addressing his post-conviction IAC and other claims, and with ensuring that he gets access to the documentation and other similar related case information that he needs, and for the most part, was never previously given;

80. Prior to the December 8 Conference, Mr. Green and Mr. Witzel had never spoken or met, see Dec. 8 Conf. Tr. Pg. 2, LL 20-22; Mr. Witzel was on CJA duty that day, see Id. at LL 9-10, and so that's who was appointed to assist Mr. Green;

81. When the conference first started, the Judge began by informing every one of his prior relationship with Mr. Witzel, see Id. at LL 14-19;

821. The Judge then went on to explain to Mr. Witzel broadly the events that had transpired in Mr. Green's Case, that thought them to where they were in the proceedings;

83. The Judge began by briefly discussing the background of Mr. Green's Case; stating that: he was convicted of several offenses following trial, see Id. at Pg. 3 LL 5-11; that around the time of his trial he began making complaints about his Trial Counsel (Mr. Breslin and Ms. Geller), stating that they were ineffective, and asking that they be relieved from further representation of him, see Id. at LL 12-16; and, that Ms. Dolan was appointed to replace Trial Counsel, but subsequently was relieved - on November 17, 2020 - upon her request to be discharged following complaints by Mr. Green regarding the effectiveness of her representation, see Id. at LL 17-20;

84. The Judge then went on to discuss with Mr. Witzel what had transpired at the November 17 Conference, when Ms. Dolan was relieved as Counsel on this Case; specifically, the Judge stated that:

THE COURT: ... . . . At the November 17 conference, I urged Mr. Green to not proceed entirely pro se. I counseled him that he was in great jeopardy [...] and I advised him that, in my opinion, he would be well advised to have a lawyer present to assist him in bringing the ineffective assistance of counsel claims that he wishes to raise as well [...] .

Id. at Pg(s). 3-4 (Interpolation and Ellipsis Added);

85. The Judge next informed Mr. Witzel of the many filings that he received from Mr. Green regarding his complaints about not receiving necessary case documents and similar related information; and the Judge informed Mr. Witzel that they discussed this, to some extent, at the November 17 Conference; see Id. at Pg. 4, LL 4-10;

86. The Judge then stated to Mr. Witzel that:

"But suffice it to say that Mr. Green has many concerns, and he would be well advised to consult with an attorney about his concerns regarding prior counsel, his concerns about documents that he wants access to, as well as other matters. I should also tell you, Mr. Witzel, that I have issued an order directing Mr. Green to complete an affidavit and waiver with respect to his prior lawyers. [...] ."

Id. at LL 14-21;

87. The Judge continued by stating:

" [...]. As you are aware, when someone brings allegations of ineffective assistance of counsel, it is necessary for the Court to hear from the lawyers who allegedly provided ineffective assistance of counsel. In order for them to ethically disclose attorney-client privileges, they require a waiver from Mr. Green. So, I told him this at the November 17 Conference. I told him he would need to submit an affidavit and waiver in order to do his ineffective assistance of counsel claims, and I set a deadline for him to do that of Dec[.] 9."

Id. at Pg(s) 4-5 (Interpolation and Ellipsis Added);

88. The Judge did not say that he waited until a few days after the November 17 Conference to actually issue the Order directing Mr. Green to complete the Waiver Form and Affidavit detailing his claims against his previous attorneys; and setting the deadline of December 9, 2020, for him to do so;

89. The Judge then asks Mr. Witzel: "What is your plan for consulting with Mr. Green? Do you have a plan yet? See Id. at Pg. 5, LL 6-7;

90. Mr. Witzel's response was:

MR. WITZEL: No, I don't have a plan yet, your Honor. But I've been looking through the docket. I was waiting to bet appointed, and after that I would figure out the time to speak to Mr. Green and work through these issues and see what assistance I could provide him. Whether he would like me to be in the role as the assistant to him, a shadow counsel, or if he would like us to take a more direct role. But all to be discussed with Mr. Green after I get appointed.

Id. Pg. 5, LL 8-15;

91. After hearing this, the Judge went on to state, inter alia, that:

THE COURT: Okay. It doesn't seem like we can accomplish much until Mr. Witzel has had an opportunity to speak with Mr. Green. [...] .

Id. at LL 22-24;

92. After some discussion between, inter alios, the Judge and the District Court Clerk / Deputy Clerk, about the scheduling of the next conference in this matter, the Judge asked if there was "[a]nything else anyone wants to say?" Id. at Pg. 7, LL 15; to which Mr. Green responded by stating that he wished to "address the Courts." Id at LL 20-21;

93. For the most part, Mr. Green apprised the District Court of some of his concerns regarding his difficulties with obtaining necessary Case file(s) and other similar related information, which, as Mr. Green explained to the District Court, he had sought, to no avail, from everyone from his previous attorneys, to the Government, to even the District Court itself. See Id. at Pg(s). 7-8;

94. For example, Mr. Green apprised the Judge that:

"I have several e-mails with myself and Ms. Dolan going back and forth, [...] where I'm practically begging Mrs. Dolan to provide me with the 3500 materials and other relevant information pertaining to me and this case.  In all of Mrs. Dolan's responses, she states that she does not have this information, neither was this information in my case files when Mr. Breslin and Ms. Geller handed it over to her."

Id. at Pg. 8, LL 12-18 (Interpolation and Ellipsis Added);

95. Ms. Dolan was just, about three (3) weeks earlier, relieved from further representing Mr. Green in this matter; and not long thereafter, after Mr. Witzel was appointed to assist Mr. Green, and moreover to replace her, she wrote a letter informing Mr. Witzel that the USB Flash-Drive sent to her by Mr. Breslin and Ms. Geller contained readable data, was broken, and or otherwise corrupt--and this was the Flash Drive that was supposed to contain, inter alia, Mr. Breslin's and Ms. Geller's Client File and other relevant case information for Mr. Green and this Case (Mr. Green can provide this letter to the Court of Appeals if necessary);

96. Trial Counsel, Mr. Breslin, later wrote a letter to the Judge, dated February 16, 2021, stating, inter alia, that: "Upon our removal from the case, we sent a flash drive to Ms. Dolan containing[,] among other things, the 3500 materials, discovery, transcripts from the trial and the pre-trial suppression hearing.  Ms. Dolan NEVER advised that she could not access the documents." Quoting Letter from Mr. Breslin to the District Court, dated February 16, 2021 (hereafter "Mr. Breslin's Feb. 16 Letter") (Mr. Green can provide a copy of this letter to the Court of Appeals if necessary, however, if this Court needs, it should be uploaded to the docket for this Case);

97. Needless to say, at the time of the December 8 Conference, Mr. Green had not yet been made aware of the issues regarding the flash drive sent to Ms. Dolan from Trial Counsel;

98. During the December 8 Conference, after Mr. Green informed the Judge that Ms. Dolan's response to his requests to her for this information was that she did not have it, and was never provided it, see Id. at Pg. 8, LL 12-18, Mr. Green went on to tell the Judge that:

"After hearing this, I sent several letters personally to the assistant United States attorney's office requesting I be provided with this information. And when that did not work, I began to submit letters to the Court, asking the courts to compel the government and predecessor counsel and Ms. Dolan to provide me with all 3500 materials and other relevant information pertaining to me and this case. I even asked the courts to make Mr. Breslin honor his proposal back on July 25, 2019, at the substitution hearing, in which he stated, as a courtesy to CJA, and Mrs. Dolan being housed out in Los Angeles, his firm would still undertake to bring me the 3500 materials for further discussion with Ms. Dolan [...] . Mr. Breslin has never done any of these things. Mrs. Dolan then responded to one or more of my letters to the courts and/or the government requesting this information by submitting a letter of her own to the courts stating, among other things, the materials/information that Mr. Green is requesting, she does not have it. Nor was it in my case file when Mr. Breslin and Ms. Geller provided it to her. So, with that said, I was troubled to hear on our last conference call Mrs. Feinstein state that she had provided Ms. Dolan with some of the 3500 materials in this case. I have never seen any of this information. Neither has Mrs. Dolan provided me with any of this information or told me about being provided with this information by the government. I have been requesting this information from everyone involved in this case for over a year now, and like most things here, all of my requests seem to have fell on deaf ears. No one has answered ANY of my requests here."

Id. Pg(s). 8-9 (Emphasis, Interpolation, and Ellipsis Added);

99. Mr. Green went on to invite the District Court to check the legal mail logbook records at the Institution he is housed at (MDC - Brooklyn), to prove that he previous attorney(s) are lying about sending him this information which he seeks. See Id. at Pg(s). 9-10; and, he then asked the District Court to, on the record, ask the Government if they provided Mr. Green with these things, and to direct that they do so. See Id. Pg(s). 10-11;

100. In response to Mr. Green's statements, complaints, and requests concerning the aforementioned information, the Judge state to Mr. Green:

THE COURT: [...]So what we're going to do now is you're going to speak with Mr. Witzel, you'll make your complaint to him.  He will tell you undoubtedly what the rules are regarding Brady, Giglio, Rule 16, and 3500 Material. And if he deems that your requests are appropriate, I'm sure he'll bring them to my attention.

Id. Pg(s). 15-16 (Interpolation and Ellipsis Added); and, the Judge similarly at the end of the Conference stated to Mr. Green that:

THE COURT:  You are going to meet with Mr. Witzel, you are going to tell him what you want. He is going to meet with or discuss with Ms. Feinstein, and then we'll take it from there.  That's what we are going to do.

Id. at Pg. 19, LL 3-6;

101.  Not long after the December 8 Conference, Mr. Green spoke with Mr. Witzel, over the phone; and, also present via the telephone conference(s) was Mr. Witzel's colleagues, Courtney Morphet, and Jennifer Coyler;

102.  They spoke over the phone on possibly two or more occasions, not long after the December 8 Conference;

103.  During one of these legal conference calls, Mr. Witzel stated to Mr. Green in front of his colleagues, that: "You know Paul (referring to the District Court Judge, the Hon. "Paul" G. Gardephe) is not too fond of you (referring to Mr. Green);

104.  Also, during one of these legal calls, Mr. Green requested that Mr. Witzel provide him with, among other things, Trial Counsels and Ms. Dolan's Client/Case File(s) for him and this Case;

105.  Moreover, Mr. Green informed Mr. Witzel, during one of these legal calls, that he had no problem signing the Waiver Form, but that he still had yet to receive it, or the Judges November 19 Order directing that he complete and return such, and an affidavit setting forth his IAC claims against his previous attorneys; also, Mr. Green informed Mr. Witzel that he sent a letter to the Judge about a week or two prior informing the Judge of this;

106. On January 5, 2021, the District Court held an electronic / telephonic Conference in this matter (hereafter the "January 5 Conference");

107. When the Conference begins, the Judge, after briefly discussing the history of the Case, states:

THE COURT: ...I issued an order on November 19, 2020, directing Mr. Green to complete an attorney-client privilege wavier form so that we could proceed with his allegations of [IAC]. Mr. Witzel, what is the status of Mr. Green's waiver form? Has that been completed or not?

January 5 Conference Transcripts (hereafter "Jan. 5 Conf. Tr."), Pg. 3, LL 3-8 (Ellipsis and Interpolation Added);

108. Mr. Witzel answered the Judge by stating:

MR. WITZEL: Judge ... just to be clear, we were appointed as shadow counsel ... [and] Mr. Green -- and he can speak for himself, to, but simply his position is that he does not want to sign that and proceed with his ineffective assistance claims or claims of prosecutorial misconduct until he has received all the information he has requested.

Id. at LL 9-16;

109. The Judge then proceeded by asking Mr. Green if this were true (what Mr. Witzel had just stated). See Id. at LL 21;

110. When Mr. Green heard what Mr. Witzel was saying, he was surprised at just how inaccurate it was; moreover, Mr. Green had just recently spoken to Mr. Witzel on the phone on a couple occasions prior to this conference, and was sure that he was clear about his desire to sign the Waiver Form: i.e., that he wished to sign the Waiver Form, but had still not received it;

111. Mr. Green tried to answer the Judge, by explaining to the Judge, among other things, his concerns; i.e., that he still had not received the information he's been requesting, nor the November 19 Order, nor the Waiver Form that accompanied that order, however, before Mr. Green could explain his position, he was cut off by the Judge, who began to become hostile and moreover antagonistic towards him:

THE DEFENDANT:  There are many reasons why I would like to be given my case file and all of the documents --

THE COURT:  We are not going to get into that.

THE DEFENDANT:  -- in this case.

THE COURT:  I asked you -- sir, sir, don't interrupt me.  I asked you a yes-or-no question.  Is it true that you are not prepared to sign the waiver form at this point? And while you are thinking about that, let me tell you the consequences of that ... .

Id. at Pg(s) 3-4 (Ellipsis Added);

112.  Moreover, the Judge told Mr. Green that: "So, I will give you another week to complete the privilege form and to prepare the affidavit.  But if I don't receive the privilege waiver form as well as the affidavit within a week's time, I'm going to put the matter down for sentencing." Id. at Pg. 4, LL 21-25 (Quoting statements made by the Judge);

113.  Mr. Green was taken back by the Judge's tone, demeanor, and moreover, statements, because he did not interrupt him; so, he tried to clarify this to the Judge, along with his position regarding the Waiver Form:

THE DEFENDANT:  First and foremost, nobody interrupted you.  You interrupted me, your Honor. When I was talking just now, you asked me a question, and when I began to talk, you just cut me off. Nobody interrupted you.  And, second, my second concern is, I NEVER RECEIVED ANY WAIVER FORM AT ALL FROM NO ONE HERE.  So, HOW COULD I FILL SOMETHING OUT IF I DON'T HAVE IT?  And--

THE COURT:  All right.  Stop right there.  Mr. Witzel, what's going on with respect to the waiver form?

Id. at Pg. 5, LL 1-10 (Emphasis Added);

114.  Mr. Witzel then answer the Judge by stating, inter alia, that:

MR. WITZEL: That's a good question, your Honor.   Mr. Green is saying he doesn't have it. Just very quickly, your Honor we have had a number at least three, calls with Mr. Green, Ms. Morphet, and myself. We have been trying to have the communication.  We have also established Corrlinks and we have had several e-mails.  There has been some problems with getting material to and from Mr. Green.

Id. at LL 11-17;

115.  Mr. Witzel then went on to state some of the difficulties that they have had with getting documentation and other similar related case information to Mr. Green at the Institution, see Id. LL 18-25; and, then getting back to the issue of the Waiver Form, Mr. Witzel states to the Judge:

"But back to your first question, I guess it is unclear.  I mean, Mr. Green is saying he doesn't have the waiver.  I don't know how -- you know, we haven't seen it.  We understood that had been sent to him before we were appointed as shadow counsel."

Id. at Pg. 6, LL 9-13;

116.  Mr. Green attempts to shed some light on the "apparent" confusion of the Judge and Mr. Witzel regarding the Waiver Form and affidavit of facts delineating Mr. Green's IAC and other claims, and moreover his desire to submit these things to the District Court so that the District Court can proceed forward with addressing and remedying those claims; however, the Judge again cuts-off Mr. Green, and grows ever more hostile and antagonistic towards him:

THE DEFENDANT: This is Mr. Green.

THE COURT: Oh, no.  No, no. Stop.

THE DEFENDANT: This is Mr. Green.  Nothing was ever sent to me.  No waiver or nothing.

THE COURT: All right.  If you continue doing this, I'M GOING TO END THE CONFERENCE.

A VOICE: (Inaudible).

THE COURT: I'm not going to argue with you. I'LL END THE CONFERENCE. So, don't do it. ...

Id. at Pg. 6, LL 16-24 (Emphasis Added);

117. Mr. Green knows that the District Court received his Dec. 4 Letter on or about December 6, 2021, explaining to the Judge, inter alia, that he had never received the Judge's Nov. 19 Order, nor the accompanying Waiver Form, because he sent it return receipt/certified mail (which shows that it was received on or about December 9, 2021); however, the Judge acted as if he had no idea about Mr. Green not having ever received it;

118. The Judge continued by asking Mr. Witzel what was going on:

"... All right. Mr. Witzel, I don't understand what you are saying, but the attorney-client privilege waiver form is on the docket. ... I don't understand what you when you say you haven't seen it. ..."

Id. Pg(s) 6-7;

119. Mr. Witzel, who had just earlier claimed that Mr. Green simply did not want to sign the Waiver Form, now has something entirely different to say:

MR. WITZEL: No, No. I -- when I say I haven't seen it, my point is, Mr. Green is saying he hasn't seen it, and I don't know if he has received it or not.

Id. Pg. 7, LL 5-7;

120. Mr. Witzel next explains to the District Court, again, that there has been issues with getting information to Mr. Green at the Institution where he is housed, by explaining that packages have arrived, but they have still yet to be delivered to him. see Id. at L 11-13; and he then explains that he will send the Waiver Form to Mr. Green personally, and make sure to do so return receipt. Id. at LL 14-17;

121. After some discussion with the Government about whether they could help ensure that Mr. Green gets the Nov. 19 Order and Waiver Form at the Institution, the Judge states that: "until we have a waiver

form, we can't make any progress on Mr. Green's claims until we get this waiver form signed." Id. at LL 21-23; which he again reiterates later: "Because, as I said, we can't make any progress here on Mr. Green's ineffective assistance claims until we get a waiver." Id. at Pg. 8, LL 9-11;

122. The Judge then states: "And everyone on the phone, OTHER THAN PERHAPS MR. GREEN, understands that." Id. at LL 11-12;

123. Mr. Green did, however, understand this; and he was frustrated by the Judge's and Mr. Witzel's pretentious efforts to establish otherwise--nevertheless, he kept his mouth shut, and waited for his turn to speak to address these and other grievances;

124. In response to the fact that Mr. Green had not yet received the Waiver Form, the Judge goes on to say to Mr. Green:

" ... Now, you say you never got the form. I will accept that... . Once you get it, I'm directing you to speak with Mr. Witzel about whether you are PREPARED to sign the form or not, and then we will have another conference call and you will tell me either that you signed the form and completed the aff-idavit or that you are unwilling to at this point."

Id. at Pg. 8, LL 21-25 (Emphasis Added);

125. Next, the Judge explains to Mr. Green that if he tells him that he is unwilling to sign the waiver form and to prepare the affidavit, that the Judge would proceed with sentencing, and Mr. Green would have to raise his IAC and other claims in the context of a habeas petition. See Id at Pg. 9, LL 1-5;

126. Then, after some discussion about the scheduling of the next conference for this Case, and again reiterating what the Judge would do if Mr. Green was unwilling to sign the Waiver Form or complete the affidavit, see Id. at Pg(s) 9-11, the Judge asks: "Is there anything else anyone wants to say?" Id. at Pg. 11, LL 5;

127. In response to the District Court's invitation, Mr. Green stated that he had something to say, see Id. at Pg. 11, LL 6; and the Judge stated: "Go ahead, Mr. Green." Id. at LL 7;

128.  Mr. Green had many concerns, and although he was lead Counsel being that he chose to proceed Pro Se, he had been up to that point for the most part completely ignored by the Judge, who directed all questions to Mr. Witzel, and cut-off Mr. Green every time he did try and speak; therefore, when the Judge asked if there was anything else anyone wanted to say, Mr. Green made sure to seize the opportunity so that he could voice his concerns about this Case, and moreover what had transpired thus far at the conference;

129.  Nevertheless, Mr. Green knew he wanted and needed to exercise his right to be heard, and knew that he needed his concerns and its version of the facts on the record, so, he chose to speak. Id at Pg. 11 LL 5-6;

130.  Mr. Green began to voice his concerns to the Judge:

THE DEFENDANT: I have serious concern[s] here. I don't have a problem at all with signing [the] attorney-client waiver. I WOULD BE DELIGHTED.

Id. at Pg. 11, LL 8-10; moreover, from here, Mr. Green goes on to voice his concerns regarding, among other things, his Client/Case File(s) and the other Case documents and similar related information that he needs and has not received despite many requests to everyone, and, this is when the Judge again interrupts Mr. Green while he is in the process of exercising, among other rights, his due process right to be heard:

THE COURT: WE ARE NOT GOING TO HEAR A SPEECH FROM YOU.

Id. at Pg. 12, LL 13-14 (Emphasis Added);

131.  Mr. Green then reminds the Judge that he has a right to be heard; and of the fact that the Judge is the one who asked if "anyone else had anything to say" (paraphrasing previous comments made by the Judge):

THE DEFENDANT: I have a right -- I  have a right to be heard here , and I feel like  you  arE making -- you are trying to make me ... [address] my claims prematurely, and this is a violation of my constitutional rights, and this is a serious issue here, so I have a right to be heard. You asked if anybody had anything to say, I didn't interrupt anybody, I waited prematurely, and now I would like to address

the courts. And for some reason, ya'll are denying me access to the courts, and that's a serious violation of my constitutional rights here.

Id. at Pg(s). 12-13 (Interpolation Added);

132. Mr. Green continues to voice his concerns to the Judge, and from there, goes on to discuss his grievances with respect to the difficulties faced surrounding his abilities and attempts to bring forth his post-conviction claims, and moreover, complete and return the Waiver Form and affidavit supporting those claims:

"Now, this case has been going on for four years now. I had ... four different lawyers... .So for me to have only a week's time to review all of this information and submit and affidavit is not fair, because it is four years' worth of stuff that I have to put in this affidavit, and I am a pro se defendant working in an institution that is locked down 24/7 due to the massive outbreaks here at MDC Brooklyn."

Id. at Pg. 13, LL 13-21;

133. Mr. Green continued to speak, and it was not long before he was informed by the Deputy District Court Clerk that the Judge had made true to his promise to refuse to hear a speech from Mr. Green by virtue of his disconnecting the line, effectively ending the conference while Mr. Green was exercising, among other rights, his right to be heard:

THE DEPUTY CLERK: Mr. Green, let me cut in. The Judge just disconnected. We are going to have to go forward in February. Sorry.

Id. at Pg. 16, LL 1-3;

134. Upon hearing from the Deputy Clerk that the Judge had disconnected the line, ending the conference, Mr. Green became very upset, confused, and frustrated--needless to say, he was overcome with myriad emotions;

135. Immediately following the Jan. 5 Conference, Mr. Green wrote a letter to the District Court Judge to attempt to document some of his concerns that he was trying to address to the Judge when the Judge disconnected the line; and, to inform the Judge that he objects to any and all future electronic /

telephonic court appearances. See Letter to Judge, dated January 6, 2021 (Docket No. 932) (hereafter the "Jan. 6 Letter");

136. In the Jan. 6 Letter Mr. Green also stated that he no longer wished to have Stand-by Counsel; and he informed the Judge that: "Just so the record is fully clear here, no one has ever sent me the attorney-client waiver form and / or the Judge's Order..." Quoting Jan. 6 Letter;

137. Additionally, in the Jan. 6 Letter Mr. Green informed the Judge that he still had not received, among other things that he had been requesting for a year or more, his Client / Case File(s) from his previous attorneys, as well as the 3500 materials and other similar related case documents and other information. See Jan. 6 Letter;

138. Moreover, in the Jan. 6 Letter Mr. Green expressed his frustrations with the Judge regarding the obvious dilatory tactics being employed by everyone - the District Court, the Government, and Mr. Green's previous attorneys - with respect to not providing Mr. Green with his Case / Client File(s) and other relevant Case documents. See Jan. 6 Letter;

139. Furthermore, regarding the obstacles put in place to stiffen Mr. Green's efforts to bring to light and redress the violations of his rights and the crimes that occurred here, Mr. Green informed the Judge in the Jan. 6 Letter that Mr. Witzel had informed him about Ms. Dolan informing him (Mr. Witzel) that the Client File that Trial Counsel sent her, on a USB Flash Drive, contained no readable data; which is a serious problem, especially being that Ms. Dolan previously informed the District Court that she raised all meritorious arguments. Something Mr. Green pointed out could not have been done if she never reviewed the Case File and other relevant information. Moreover, Mr. Green went on to state therein that: "It seems as though every attorney I've had on this Case is prone to misleading me and the Courts. This has to stop." See Jan. 6 Letter;

140. Mr. Green had been making verbal and written complaints to everyone involved in this Case about not receiving his Client / Case File(s) and other information that he had been requesting; for years Mr. Green practically has begged everyone for this information, and or for help obtaining the same, and this includes the District Court Judge--however, no one here was any help;

141. Albert Einstein is synonymous with genius, and one of his many famous quotes rings true here, to-wit: "A foolish faith in authority is the worst enemy of truth." Albert Einstein (1879-1955);

142. Moreover, as time went on the veil over Mr. Green's eyes, blinding him from seeing the complete breakdown in the adversary process, because he foolishly trusted in those in charge of said process -

began to lift more and more; and soon, he began to realize that the gut feeling he had been having that the Judge was bias, prejudice, and partial, was in fact because he really is;

143.   Furthermore, these subjective fears of bias on part of the Judge were starting to, as time went on, become corroborated more and more by the objective: i.e., by the Judge's seeming reluctance to ensure that Mr. Green is given his Client / Case File(s) and other Case documents and information he needs; and, moreover, by the Judge's conduct, statements, actions, and moreover behaviors that took place at the Jan. 5 Conference, coupled with Mr. Witzel's comment just days before to Mr. Green that: "Paul (referring to the Judge") is not too fond of you (referring to Mr. Green);

144.   Therefore, in light of these concerns, Mr. Green apprised the Judge in the Jan. 6 Letter of how he felt: "... I feel as though the Court is bias; that it's trying to force me to address my claims prematurely because the Court has already made up it's mind about whether my trial attorney's were effective:

        THE COURT: ... I will say that I think both Mr. Breslin and Ms. Geller have performed admirably throughout their entire representation of Mr. Green, both in terms of their in-court performances as well as in their written materials. So I think that Mr. Green has been the beneficiary of excellent representation up to now.

Transcripts of July 25, 2019 Substation Conference, Pg(s) 5-6. Jan 6. Letter (Citations to Transcripts in Original);

145.   Not long after submitting the Jan. 6 Letter to the District Court, Mr. Green caused to be sent to the Judge a letter dated January 15, 2021, titled: "Mr. Green's Written Objections to The Court's Order Dated: November 19, 2021" (see Docket No. 934) (hereafter the "Jan. 15 Letter");

146.   In the Jan. 15 Letter Mr. Green expressed his concerns with the issue of the District Court ruling on Trial Counsel's post-trial Rule 29 and 33 motions, knowing that Mr. Green was not satisfied with such, and before he and or Ms. Dolan could be given an opportunity to amend/supplement such with, among other meritorious claims, Mr. Green's claims of ineffective assistance of counsel and government misconduct. See Jan. 15 Letter;

147.   Mr. Green wrote another letter to the Judge, this one dated January 17, 2021, titled: "Letter Regarding Client File" (hereafter the "Jan. 17 Letter");

148. In the Jan. 17 Letter, Mr. Green informed the Judge that: "Since my last court appearance in this matter, I've received the [Waiver Form], and what appears to be the attorney Zoe Dolan's Client File for me." Quoting Jan. 17 Letter (Interpolation Added); and, he also mentioned the issue with Trial Counsels client file not being on the USB Flash-Drive sent to Ms. Dolan by Trial Counsel, voicing his concerns how no one has tried to reach out to them, to his knowledge, to obtain a working copy. See Jan. 17 Letter;

149. Moreover, Mr. Green, in the Jan. 17 Letter, asked the Judge to take heed to the fact that he still is without this information; and he asked for everyone's assistance in ensuring that he obtains such so that he can adequately respond to the Court's Order(s), and moreover finish preparing his post-conviction claims/affidavit. See Jan. 17 Letter;

150. On or about January 26, 2021, Mr. Green caused to be sent to the District Court a "Motion for Extension of Time", (Docket No. 940); wherein Mr. Green sought more time to respond to the District Court's Order requiring him to submit his affidavit delineating his post-conviction claims and the signed Waiver Form by February 9, 2021 (see Docket No. 940);

151. In the Motion for Extension of Time, Mr. Green reiterated to the District Court the fact that after years of requests, he still was without, inter alia, Trial Counsels Case / Client File; and that he needs these things to fully develop said claims;

152. Mr. Green also informed the Judge that in his Dec. 4 Letter that he sent to the District Court, he apprised the District Court that the Institution where he is housed - the Metropolitan Detention Center (MDC), in Brooklyn, New York - is on lockdown due to a Coronavirus outbreak at the Intuition; and, that this lockdown was highly publicized, and moreover severely impedes his abilities to work on his Case, and moreover meet the February 9 deadline, and that there is no indicating when said lockdown would end (see Docket No. 940, Paragraph(s) 21, 24);

153. Additionally, Mr. Green discussed some of the other difficulties put in place with respect to his abilities to work on his Case, dealing primarily with the Coronavirus restrictions, and the extremely limited access to legal research facilities and computers at the Institution. (see Docket No. 940, Paragraphs 25-35);

154. Moreover, Mr. Green apprised the Judge that there was currently "no paper" at the Institution for the printers, effectively preventing him from working on his Case, and moreover completing the affidavit in response to the District Court's February 9 deadline. (See Docket No. 940, Paragraph 33);

155. Therefore, Mr. Green humbly asked the District Court to please grant him an extension of time so that he can be relieved of the prejudices discussed within the Motion for Extension of Time, so that he can be provided with a meaningful opportunity to be heard with respect to his post-conviction claims, and, moreover, so that he has adequate time to complete the affidavit, and sign and return the Waiver Form. (see Docket No. 940);

166. Mr. Green also stated, in the Motion for Extension of Time, that: "To deny Mr. Green this request, in light of the aforementioned information, would be arbitrary, and a clear abuse of discretion." (see Docket No. 940, Paragraph 36);

157. As previously stated, Mr. Green notified the District Court in the Jan. 17 Letter that since the Jan. 5 Conference, he "finally" received the Waiver Form; which was not received by him until on or about January 12, 2021, nearly one and a half years after the Judge first stated - at the October 21 Sentencing Hearing - that such would be necessary here in order for the District Court to proceed forward with addressing Mr. Green's IAC and other post-conviction claims;

158. Moreover, when Mr. Green did finally get the Waiver Form, which had to be Notarized, signed, and returned to the District Court by February 9, 2021, per the Judge's Order, he ran into difficulties getting it notarized. In fact, due to Intuitional Policy, the Institution stated that it did not Notarize documents for prisoners who are "not" sentenced--and Mr. Green has yet to be;

159. Eventually, Mr. Green was able to get someone at the Institution to stamp the form using the only method available; which is some type of stamp used by the Bureau of Prisons, which is to some degree similar to a Notary; and this was not able to get done until February 7, 2021;

160. Because of the delay in getting the Waiver Form to Mr. Green, and because of issues with Institutional Policy regarding Notary Publics and unsentenced prisoners, Mr. Green was not able to get the Waiver Form in the mail until February 8, 2021, a full day before it was required to be filed in the District Court; however, because of the prisoner mail-box rule, the Waiver Form was considered timely filed upon it being given to institutional staff for delivery;

161. On or about February 8, 2021, the Judge issued an Order (see Docket No. 945) (hereafter the "Feb. 8 Order") - misstating Mr. Green stating that: Defendant Brandon Green has informed the Court that he "refuses" to participate in any further proceedings by telephone (Jan. 6, 2021 Def. Ltr. (Dkt. No. 932)). As a result of the COVID-19 pandemic, in-person operations at the courthouse in this District have been suspended, because such proceedings cannot be safely conducted... Given [Mr.] Green's "refusal" to participate by telephone, the conference in this matter previously scheduled for February 9, 2021, is adjourned sine die. Feb. 8 Order (Citations to Record in Original);

162. On or about this same day, Mr. Green sent the Judge written objections, to object and moreover clarify the Judge's misstatements in the Feb. 8 Order (hereafter the "Letter Objecting to Feb. 8 Order");

163. In the Letter Objecting to Feb. 8 Order, Mr. Green stated that he never "refused" to attend any further telephonic hearings; but instead was "formally objecting" to any such hearings in the future under the premises that his rights to, inter alia, due process are being violated at the telephonic hearing(s) by virtue of the Judge disconnecting the line while Mr. Green was speaking at the Jan. 5 telephonic Status Conference. Letter Objecting to Feb. 8 Order (Quotations in Original);

164. Regarding Mr. Green's Motion for Extension of Time to comply with the District Court's February 9 deadline, Mr. Green submits that the Government did file a response, but, that he did not receive that response until two (2) days after the Judge issued an Order denying said Motion;

165. On or about February 10, 2021, the Judge issued an Order (Docket No. 950) (hereafter the "Feb. 10 Order"), vacating it's Nov. 19 Order, stating - incorrectly - that: "Because [Mr.] Green has not submitted an executed waiver form and has not submitted an affidavit detailing his [IAC] claims ... this Court will not consider [those] claims prior to sentencing." Quoting Feb. 10 Order (Ellipses and Interpolation Added);

166. Mr. Green did, however, submit the executed Waiver Form on time contrary to the Judge's aforementioned contentions in the Feb. 10 Order; moreover, notwithstanding the fact that Mr. Green feels as though he was rushed into prematurely filing such, Mr. Green avers that he was not able to submit the affidavit detailing his IAC and other claims on or before the 9th of February, 2021, because of the prejudices suffered by him that were made clear to the Judge in, among other filings, Mr. Green's Motion for Extension of Time (e.g., the Institution was out of paper and was on lockdown);

167. Mr. Green, as a result of the Judge's Feb. 10 Order, coupled with his previous acts/displays of antagonism, hostility, prejudice, partiality, and bias against him, to include his disconnected the line during the Jan. 5 Conference, decided to formally move to recuse the Judge;

168. Moreover, Mr. Green needed to seek reconsideration of the Judge's Feb. 10 Order, which itself was the product of the Judge's bias, and he therefore could not have expected to receive a fair hearing before the Judge regarding such; moreover, Mr. Green did not feel as though the Judge would or could rule fairly on any matters in this cause, so he decided to move to have the Judge recuse himself, and allow for the appointment of another Judge;

169.  The Recusal Papers were filed in the District Court on or about February 26, 2021;

170.  Not long after Mr. Green filed the Recusal Papers, the Judge Ordered the Government to respond, which they did (See Docket No. 969, entered on: 03/18/2021) (Government Response Opposing Mr. Green's Recusal Pleadings) (hereafter "Gov. Opp. to Recusal");

171.  The Gov. Opp. to Recusal was clearly a bad-faith attempt by the Government to establish a pretense for the Judge to deny Mr. Green's Recusal Papers by intentionally misstating the facts and record, and misconstruing Mr. Green's issues and arguments raised therein; which is something Mr. Green did an excellent job establishing in his Reply to Government's Opposition to Recusal (see Docket No. 977) (Mr. Green's Reply to Government's Opposition to Recusal);

172.  The Judge never formally answered Mr. Green's Recusal Papers; instead, Mr. Green found out through Stand-by Counsel, the attorney Steven Witzel, during a legal conference call, that the Judge was "not coming off this case";

173.  Furthermore, on or about May 18, 2021, Mr. Green sent a document to the Judge titled: "Request for Formal Ruling; And, Notice of Intent" (see Docket No. 994, entered: 05/20/2021) (hereafter the "Formal Request");

174.  In the Formal Request, Mr. Green informed the Judge that his efforts to come to some kind of post-conviction plea agreement with the Government had proved fruitless, and, that he needed to proceed forward accordingly in this Case; so, Mr. Green respectfully requested that the Judge formally rule on the matter of recusal pending before the Judge, and thereafter recuse himself from the Case, and allow for the appointment of another judge to hear the proceedings (See Formal Request);

175.  Moreover, in the Formal Request, Mr. Green reminded the Judge that his sentencing hearing was fast approaching, and he asked that the Judge stay the proceedings pending it's recusal; also, he explained to the Judge that in the event that these things were not done, he would proceed forward with seeking appropriate relief in the Second Circuit Court of Appeals, by way of a Stay of the District Court Proceedings, and Mandamus Petition to review the matter of the Judge's refusal to recuse (See Formal Request);

176.  The Judge has not recused himself, nor issued a Stay, and with Mr. Green's sentencing now less than a week away, he seeks and Emergency Stay from the Second Circuit of the District Court Proceedings, and mandamus relief to order recusal of the Judge, and reassignment of the case to

another Judge to hear the proceedings; and/or, an order compelling the Judge to formally rule on the Recusal Papers pending before the District Court;

## SWORN DECLARATION

I, Brandon Green, DO HEREBY Swear Under Penalty of Perjury that the information contained in the foregoing Affidavit of Facts is true and correct. Under 28 U.S.C. Section 1746.

SWORN TO and EXECUTED On this 14th Day of June 2021.

Signature: _____/S/_____

Print: Brandon Green

## CERTIFICATE OF SERVICE

I, Brandon Green, DO HEREBY Certify that a true and correct copy of the foregoing Affidavit of Facts was delivered via U.S. Mail to the Office of the United States Attorney for the Southern District of New York, On this 14th Day of June 2021.

Respectfully Submitted,

_____/S/_____

Brandon Green Reg. # 56400-054

Petitioner/Defendant, Pro Se

MDC - Brooklyn

P. O. Box 329002

Brooklyn, New York 11232

To: Judge Paul G. Gardpege

40 Foley Square , New York, NY 10007


From: Brandon Green,

Petitioner / Defendant.

----------------------------------------------X


Dist. Ct. Case No. 16 Cr. 281, App. Ct. Case No. (Unknown/Unassigned)


### PETITION FOR WRIT OF MANDAMUS


## I. Introduction


Petitioner / Defendant, Brandon Green, Pro Se, hereby respectfully petitions the Second Circuit Court of Appeals for a Writ of Mandamus, seeking review of the District Court Judge's - the Honorable Paul G. Gardephe's (hereafter the "Judge") - refusal to recuse himself following Mr. Green's filing of timely and legally sufficient Affidavit(s) and Motion(s) to Recuse [1]; and, for an Order directing the Judge to recuse himself, and reassigning the case to another judge to hear and handle the District Court proceedings.  The information supporting this Petition is as follows:


## II. Conclusion


The Judge abused his discretion, and violated, inter alia, Mr. Green's Constitutional Rights, and the U.S. Code Judicial Conduct, Judicial Cannons, by refusing to recuse himself; because: (1) the Judge is actually bias, partial, and prejudice; (2) there exists an impermissible appearance of impropriety / partiality; and (3) the Judge violated the U.S. Code Judicial Conduct, in several respects.  Therefore, the Second Circuit should issue an Order directing the Judge to recuse himself and allowing for the appointment of another judge to hear the District Court proceedings.  Furthermore, recusal here is

---

[1] Docket Entry for Docket No. 955 only makes reference to the Motion to Recuse and Motion to Reconsider filed by Mr. Green; however, along with those documents Mr. Green also filed an Affidavit of Recusal, which was also his Affidavit of Facts In Support of, inter alia, his Motion to Recuse.

necessary to both promote and restore public confidence in the judiciary, and moreover the criminal justice system as whole.

III. Some Relevant Law

    1.  Liberal Construction; Pro Se Pleadings

        The courts are required to liberally construe pro se pleadings to raise the strongest arguments that they suggest.  See, e.g., Burgos v. Hopkins, 14 F. 3d 787 (2d Cir. 1994).

    2.  Refusal to Recuse; Review; Procedural Vehicle; Mandamus

        Mandamus is appropriate for appellate court review of a District Court judge's refusal to recuse. See, e.g., In Re Kensington Int'l Ltd., 353 F. 3d 211, 219-20 (3d Cir. 2003).  Moreover, a petition for a writ of mandamus based on a District Judge's refusal to recuse himself requires that the appellate court consider both the standard for issuance of the writ and the standard for review of the recusal decision itself.  In Re Vincent Basciano, 542 F. 3d 950 (2d Cir. 2008).

    3.  Refusal to Recuse; Standard of Review; Mandamus; Abuse of Discretion

        It is well settled that the exceptional remedy of mandamus will only be invoked where the petitioner has demonstrated that its right to such relief is clear and indisputable.  The district court judge has discretion in the first instance to determine whether to disqualify himself.  The appellate court will overturn the district court's determination in that regard only if it constitutes an abuse of discretion. The recusal decision requires that the district court carefully weigh the policy of promoting public confidence in the judiciary against the possibility that those questioning his impartiality might be seeking to avoid the consequences of his expected adverse decisions.  In Re Vincent Basciano, 542 F. 3d 950 (2d Cir. 2008).

    4.  Refusal to Recuse; Mandamus; Standard of Review; Abuse of Discretion; General Overview

        In order for the appellate court to issue the writ of mandamus, the petitioner must clearly and indisputably demonstrate that the district court abused its discretion.  Absent such a showing, mandamus will not lie.  In Re Vincent Basciano, 542 F. 3d 950 (2d Cir. 2008).  A district court has abused its discretion if it has (1) based its ruling on an erroneous view of the law, (2) made a clearly erroneous assessment of the evidence, or (3) rendered a decision that cannot be located within the range of permissible decisions.  Patrolmen's Benevolent Ass. of City of NY, Inc., The City of NY Police Dept., et al., 589 F. 3d 94 (2d Cir. 2009).

5.  Decision to Recuse; When Required; Abuse of Discretion

A judge must recuse himself in any proceeding in which his impartiality might reasonably be questioned.  In Re Vincent Basciano, 542 F. 3d 950 (2d Cir. 2008).


6.  Right to Impartial Decision maker; Due Process Clause

Due process clause of Fifth Amendment entitles persons to impartial and disinterested tribunal in both civil and criminal cases, since requirement of neutrality in adjudicative proceedings safeguards two central concerns of procedural due process: prevention of unjustified or mistaken deprivations and promotion of participation and dialogue by affected individuals in decision making process; since neutrality requirement helps to guarantee that no person will be deprived of interests without proceeding in which he has assurance that arbiter is not predisposed to find against him, stringent rule that justice must satisfy appearance of justice must be applied, although it may sometimes bar trial by judges who have no actual bias.  Marshall v. Jerrico, Inc., (1980) 446 U.S. 238, 64 L Ed 2d 182, 100 S. Ct. 1610, 24 BNA WH 681.


7.  Recusal of Judge; Supreme Court Precedent; Due Process

The U.S. Supreme Court's precedents set forth an objective standard that requires recusal when the likelihood of bias on part of the judge is too high to be constitutionally tolerable.  Williams v. Pennsylvania, 195 L Ed 2d 132 2016 US LEXIS 3774 (2016).


8.  Due Process; Recusal of Judge; Objective Standards

Objective standards may require recusal whether or not actual bias on the part of a judge exists or can be proved.  Due process may sometimes bar trial by judges who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties.  The failure to consider objective standards requiring recusal is not consistent with the imperative of due process. Caperton v. A. T. Massey Coal Co., 129 S. Ct. 2252, 173 L Ed 2d 1208, 556 U.S. 868 (2009).


9.  Recusal of Judge; Appearance of Impropriety

A judge shall avoid impropriety and the appearance of impropriety.  A test for appearance of impropriety is whether the conduct would create in reasonable minds a perception that the judge's ability to carry out judicial responsibilities with integrity, impartiality and competence is impaired. Caperton v. A. T. Massey Coal Co., 129 S. Ct. 2252, 173 L Ed 2d 1208, 556 U.S. 868 (2009).


10. Recusal of Judge; Ethical Rules

Due process demarks only the outer boundaries of judicial disqualifications. Most questions of recusal are addressed by more stringent and detailed ethical rules. Caperton v. A. T. Massey Coal Co., 129 S. Ct. 2252, 173 L Ed 2d 1208, 556 U.S. 868 (2009).

## IV. Statement of Relevant Facts

The relevant facts supporting this Mandamus Petition are contained within the accompanying "Affidavit of Facts In Support of Mandamus Petition; And, Emergency Stay Request" (hereafter the "Accompanying Affidavit"); which Mr. Green fully adopts and incorporates herein. Moreover, Mr. Green asks those reading this Petition to, if they have not already, read the Accompanying Affidavit before proceeding forward with further review and consideration of the same.

## V. Discussion on Law and Facts

### A.   U. S. Code of Judicial Conduct

Although the Due Process Clause clearly requires disqualification of the District Court Judge here, the issue of recusal in Mr. Green's Case can instead be more easily addressed using the Code of Conduct for United States Judges, 28 U.S.C.  See Caperton v. A. T. Massey Coal Co., 129 S. Ct. 2252, 173 L. Ed. 2d 1208, 556 U.S. 868 (2009) (Because Codes of Judicial Conduct provide more protection than due process requires, most disputes over disqualification will be resolved without resort to the United States Constitution).  Therefore, Mr. Green will tailor his arguments supporting recusal primarily using the Judicial Canons, in 28 U.S.C., U. S. Code Judicial Conduct.

Here, Mr. Green filed Affidavit(s) and Motion(s) (Docket No. 955) seeking to recuse the District Court Judge for, inter alia, violations of several of the Judicial Canons, as well as for violating the Due Process Clause, and 28 U.S.C. Sections 144, and 455.  However, the Judge refuses to recuse himself, and to hear Mr. Green's ineffective assistance of counsel and other post-conviction claims prior to sentencing; and Mr. Green's currently scheduled sentencing date is for June 17, 2021. Therefore, Mr. Green has sought review of the Judge's refusal to recuse, in the Second Circuit, via this Mandamus Petition; and, he's also seeking an Emergency Stay of the District Court proceedings pending this Court's review of the same (See Emergency Stay Request (sent herewith)).

### 1. The January 5 Conference

The first issues supporting recusal that Mr. Green would like to discuss are the events that took place at the January 5 Conference.  Now, Mr. Green is aware that in his case there are several factors supporting recusal, and he relies on all of them; however, the Judge's actions, statements, and behaviors at this conference are surely some of the more clear and more egregious examples supporting Mr. Green's contentions that the Judge is bias, partial, and prejudice, and should therefore recuse

himself from this Case. Therefore, Mr. Green will begin his discussion with the issues that transpired leading up to and surrounding the January 5 Conference.

A lot had transpired in Mr. Green's Case prior to the January 5 Conference. See Accompanying Affidavit (which discusses the relevant events leading up to the January 5 Conference). Prior to this Conference, Mr. Green's Case was nearing approximately five (5) years in age, and it had been over a year since Mr. Green's initially was scheduled to be sentenced back in October of 2019; moreover, prior to this Conference Mr. Green had four (4) different attorneys appointed and relieved from representing him in this matter. Additionally, for over a year prior to this Conference, Mr. Green had sought from everyone involved in this Case necessary Case documents, which thus far had not been provided to him--despite Mr. Green practically begging for it. Furthermore, just prior to this Conference, at a conference held on November 17, 2020, the District Court Judge relieved Ms. Dolan from further representing Mr. Green, and had said that it would, upon Mr. Green's request, grant Mr. Green Pro Se status, with the assistance of CJA Counsel as Stand-by / Shadow Counsel; however, it appears as though the Judge, for the most part, ignored Mr. Green's Pro Se / lead counsel status, and focused his attention primarily on Mr. Green's Stand-by Counsel, the attorney Steven Witzel. Moreover, for the most part, every time Mr. Green tried to speak at the January 5 Conference, the Judge cut him off, and stopped him from speaking. To make matters worse, the Judge even went so far as telling Mr. Green that he would not be allowed to make a speech, threaten to disconnect the line, and then actually did so, effectively ending the Conference while Mr. Green was in the process of speaking (exercising, among other rights, his rights to, petition for redress, to access the courts, and to be heard).

Now, it is well settled that: "[a]n accused may insist upon representing [himself]. The right to defend is personal, and a defendant's choice in exercising that right must be honored out of that respect for the individual which is the lifeblood of the law. The right to appear pro se exists to affirm the dignity and autonomy of the accused. Quoting McCoy v. Louisiana, 200 L. Ed. 2d 821, 594 U.S. ____, 138 S. Ct. ____, 2018 U.S. LEXIS 2802 (Interpolation Added). Here, however, the Judge has clearly failed to honor Mr. Green's Pro Se status; furthermore, in doing so, the Judge has also violated several more rights of Mr. Green's, to include his right to a fair and impartial tribunal. Moreover, such conduct and behavior on part of the Judge is also direct violation of the U.S. Code of Conduct for United States Judges, Title 28 U.S.C.

Now, as it relates to the Code of Conduct for United States Judges, Title 28 U.S.C., Mr. Green submits that the Judge violated the following provisions at the January 5 Conference:

a) Canon 1: An Independent and Honorable Judiciary is Indispensible to Justice in Our Society.

This Canon states that: An Independent and honorable judiciary is indispensable to justice in our society. A judge should maintain and enforce high standards of conduct and should personally observe those standards, so that the integrity and independence of the judiciary may be preserved. The provisions of this Code should be construed to further that objective. 28 U.S.C., U.S. Code Judicial Conduct, Canon 1.

Here, the Judge has violated this Canon by failing to maintain and enforce high standards of conduct, and moreover, for failing to personally observe high standards himself. An example of these shortcomings of the Judge would be his statements to Mr. Green to the effect that the Judge would not allow him to make a speech (THE COURT: We are not going to hear a speech from you. January 5 Conference Transcripts ("Jan. 5 Conf. Tr.") Pg. 12, Lines ("LL") 13-14); and the Judge's threatening to disconnect the line, and then his actually doing so while Mr. Green was exercising, among other rights, his right to proceed Pro Se, and his right to be heard. See Accompanying Affidavit, Paragraphs ("Para(s).") 106-134 (discussing the January 5 Conference, and what took place there with respect to the Judge's disconnecting the line while Mr. Green was speaking). Furthermore, not only was such statements and conduct on behalf of the Judge a violation of Canon 1, but it also was done in contravention of Canons 2 and 3, among other laws and legal provisions.

b) Canon 2: A Judge Should Avoid Impropriety and the Appearance of Impropriety in All Activities

Specifically, sub-section "(A)" of Canon 2 states: A judge should respect and comply with the law and should act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary. 28 U.S.C., U. S. Code Judicial Conduct, Canon 2(A). Moreover, the "COMMENTARY" section for Canon 2(A) states: "Actual improprieties under this standard include violations of law, court rules, or other specific provision of this Code." Quoting Id.

c) Canon 3: A Judge Should Perform the Duties of Office Fairly, Impartially and Diligently

Canon 3 states, in pertinent part, that:

The duties of judicial office take precedence over all other activities. The judge should perform those duties with respect for others, and should not engage in behavior that is harassing, abusive, or biased. The judge should adhere to the following standards:

(A) Adjudicative Responsibilities

(1) A judge should be faithful to and maintain professional competence in the law....

(2) A judge should hear and decide matters assigned, unless disqualified, and should maintain order and decorum in all judicial proceedings.

(3) A judge should be PATIENT, DIGNIFIED, RESPECTFUL, and COURTEOUS TO LITIGANTS ..., lawyers, and others whom the judge deals within an official capacity, and should require the same conduct by those subject to the judge's control, including lawyers to the extent consistent with the adversary process.

(4) A judge SHOULD ACCORD TO EVERY PERSON WHO HAS A LEGAL INTEREST IN A PROCEEDING, and that person's lawyer, THE FULL RIGHT TO BE HEARD ACCORDING TO LAW ... .

28 U.S.C., U. S. Code Judicial Conduct, Canon 3 (A) (Emphasis and Ellipsis Added).

Moreover, the Judge's statements, actions, and conduct at the January 5 Conference - discussed above - were a clear violation of all the aforementioned Judicial Canons. Specifically, when the Judge told Mr. Green that he would not be allowed to give a speech, and when he threatened to disconnect the line, and then actually did while Mr. Green was speaking, the Judge was not maintaining nor enforcing high standards of conduct in violation of Canon 1, and was not acting in a manner that promotes public confidence in the integrity and impartiality of the judiciary in violation of Canon 2. Furthermore, such statements, conduct, and behavior on part of the Judge was a clear violation of the Judges Adjudicative Responsibilities. See Canon 3(A).  For example, when the Judge told Mr. Green that he would not be allowed to give a speech, and then threatened to disconnect the line, and then actually did so while Mr. Green was speaking, the Judge was not being patient nor respectful, see Canon 3(A)(3), and he definitely did not accord to Mr. Green, who had a legal interest in the proceeding and was Pro Se, the full right to be heard according to law. See Canon 3(A)(4).  This is a serious problem.

Furthermore, the Judge was clearly hostile and antagonistic towards Mr. Green at the January 5 Conference.  Several times the Judge cut-off Mr. Green while he was speaking, and then turned around and tried to make it appear as though it was Mr. Green that interrupted him.  Mr. Green, however, made sure to clarify this on the record when he explained to the Judge that he did not interrupt him, but that it was him (the Judge) that interrupted Mr. Green.  Clearly, this, coupled with the aforementioned statements and conduct of the Judge shows that he is in fact bias, partial, and prejudice against Mr. Green; and / or, at a very minimum, such creates an impermissible appearance of bias, prejudice, and partiality.  Accordingly, the Judge should have recused himself, and allowed for the appointment of another judge. See Canon 3(C)(1) (A judge shall disqualify himself in a proceeding in which the judge's impartiality might reasonably be questioned).

Additionally, besides the Judicial Canons, there several other analogous legal provisions supporting recusal here which Mr. Green argued in his Recusal Papers, which he briefly reiterates here: Under 28 U.S.C. Section 455(a), the disqualification of any justice, judge, or magistrate of the United States is required in any proceeding in which a person's impartiality might reasonably be questioned; and under 28 U.S.C. Section 455(b)(1), such a person's disqualification is required in circumstances where such a person has a personal bias or prejudice concerning a party... . Also, 28 U.S.C. Section 144 provides for the disqualification of a federal district judge upon a party's filing of a timely and sufficient

affidavit that the judge has a personal bias or prejudice. See Liteky v. United States, 114 S. Ct. 1147, 127 L. Ed. 2d 474, 510 US 540 (1994).

    Mr. Green contends that all of the above-mentioned legal provisions warrant recusal here, and that clearly the Judge has abused his discretion for failing to recuse. Also, there are more grounds / reasons supporting Mr. Green's contentions that the Judge actual is, and or that there is an impermissible appearance of, bias, prejudice, and partiality. Mr. Green will briefly discuss those below.


    2. Judge's Mind Already Made Up About IAC Claims


    Mr. Green submits that there were a lot of factors that contributed to his decision to move to recuse the Judge; unfortunately, because he does not have much time to submit this Mandamus Petition, Mr. Green cannot delve into all of these grounds at this time, so, he has decided to just briefly discuss some of them. One of these other factors contributing to Mr. Green's decision to recuse the Judge, and moreover something else that supports Mr. Green's contentions that the Judge is bias, partial, and prejudice, is the comments made by the Judge at the Substitution of Counsel Hearing that was held in this matter on July 25, 2019:


THE COURT: ... . I will say that I think both Mr. Breslin and Ms. Geller performed ADMIRABLY throughout their entire representation of Mr. Green, both in terms of their in-court performance as well as their written materials. So, I THINK that Mr. Green has been the BENEFICIARY OF EXCELLENT REPRESENTATION UP TO NOW.


    July 25, 2019 Substitution of Counsel Hearing Transcripts ("July 25 Sub. Csl. Tr."), Pg(s). 5-6 (Emphasis Added). Clearly the Judge has already made up his mind about whether or not Mr. Green's Trial Counsel, the attorneys Eric R. Breslin and Melissa S. Geller, perfumed effectively. This, however, is a problem, and it is one that requires recusal. See Unites States v. Dreyer, 693 F. 3d 803 (9th Cir. 2012) (where the Ninth Circuit Court of appeals ordered the case be reassigned to a different judge on remand because of comments made by the trial judge that reflected her premature judgment). Here, the Judge has prematurely judged the effectiveness of the level of representation Mr. Green received by his Trial Counsel, even in light of several complaints, both verbal and written, being made by Mr. Green.

    Moreover, these statements by the Judge, especially coupled with the Judge's refusal to previously address Mr. Green's written and verbal complaints regarding the effectiveness of his attorneys, and especially in light of the Judge's reluctance to help Mr. Green get the Case / Client File(s), show that he is actually bias, partial, and prejudice, and definitely create an impermissible appearance of bias, partiality, and prejudice. Moreover, Mr. Green does not feel that he can receive a fair hearing in front of the Judge regarding his IAC claims because of this. Accordingly, the Court of Appeals should order the Judge to recuse himself and allow for the appointment of another judge to hear the proceedings.

3. Other Factors Warranting Recusal

In addition to everything already mentioned herein, Mr. Green would like to point out that looking back at how the events in his case thus far have transpired, it is easy to see that the Judge was partial, bias, and prejudice against him, and was never trying to give him a full and fair hearing on his ineffective assistance of counsel and other claims. Moreover, the Judge's statements, conduct, and behavior throughout the course of these proceedings manifests this bias, partiality, and prejudice.

For example, if the Judge really was concerned with addressing Mr. Green's IAC and other post-conviction claims, the Judge would have ensured that Mr. Green received and signed the Waiver Form a long time ago; in fact, the Judge could have had Mr. Green sign an attorney-client privilege waiver form at the October 31, 2019 sentencing hearing, when the Judge first stated that such would be necessary. Moreover, at that time, and ever since, Mr. Green has expressed to the Judge that he would be delighted to sign the Waiver Form, informing the Judge that he maintained his innocence to all of his attorneys, so, he would have nothing to fear and everything to gain from doing so. Moreover, Mr. Green is not so sure now that the Judge was even correct in stating that his IAC and other post-conviction claims could be addressed until he submitted such. See Rudaj v. United States, 2011 U.S. Dist. LEXIS 67745, 11 Civ. 1782 (DLC) (S.D.N.Y. 2011) (discussing an opinion of the American Bar Association, the Government argued that an attorney could ethically respond to the ineffective assistance claim WITHOUT NEED for a waiver from his client IF HE WAS ORDERED TO DO SO BY COURT ORDER. See American Bar Association, Standing Committee on Ethics and Professional Responsibility, Formal Opinion 10-456, July 15, 2010, at 1). Therefore, if the Judge really was all that concerned with addressing Mr. Green's IAC claims, he could have just ordered Mr. Green's previous attorney(s) to respond, and or, there is likely other options the Judge could have employed to hear, address, and attempt to resolve Mr. Green's grievances-- however, it does not appear as if the Judge was really all that concerned with such.

Something else supporting the lack of the Judge's concern regarding Mr. Green's allegations of ineffective assistance of counsel is that fact that the Judge continued to allow the same attorneys who Mr. Green was raising claims against to continue to play an active role in his Case, after they were relieved as counsel following Mr. Green's request because of his dissatisfaction with their performance. Specifically, at the July 25 Substitution Hearing, the Judge allowed Mr. Breslin's firm to continue to undertake to bring 3500 / protected discovery materials to Mr. Green at the Institution where he is housed. This does not make much sense either, especially being that one of Mr. Green's many complaints about Mr. Breslin and Ms. Geller was that they had not came to the institution to go over with him this same and other information and court filings. The real reason Mr. Breslin stated to the Court that his firm would continue to do this was not as a courtesy to Ms. Dolan, but was so that they could continue to keep Mr. Green from seeing the very information that they had kept from him all along, which, if they were to now show it to Mr. Green, would only support his contentions that they were in fact ineffective. This is a serious problem, and proof of the ulterior motives of Mr. Breslin can be seen in his statements to the Judge regarding this request, to-wit:

MR. BRESLIN: ... The existence of the protective order is going to make it sometimes difficult I think for Ms. Dolan to be able to go over certain parts of the 3500 material with Mr. Green because she's in

California. My firm will undertake to continue to bring the cooperator 3500 material to Mr. Green so that he can review it for later conversations with Ms. Dolan as a courtesy to the Court and to the CJA so that this thing DOES NOT SLIDE FURTHER.

Jan. 25 Sub. Csl. Tr. Pg. 5, LL 2-9 (Emphasis Added).


Mr. Breslin had been relieved from further representing Mr. Green, and Mr. Green does not feel as though the Judge should have allowed this, and or, should have advised against this. Moreover, it appears from Mr. Breslin's comment that the true purpose of doing this was to stiffen Mr. Green's efforts to bring forth his IAC claims, and moreover, to keep a lid on all the mistakes that had been made thus far, hence Mr. Breslin's comment: "... so that this thing DOES NOT SLIDE FURTHER", was a clear indicator of the real intent behind doing so. Either way, with all that took place here, this is highly suspect, and further supports Mr. Green's contentions of the Judge's bias, and moreover the complete breakdown in the administration of justice here.

Furthermore, another thing that stood out to Mr. Green, that raised serious questions regarding the Judge's bias, partiality, and prejudice, was how the Judge issued the hasty November 19, 2020 Order, only giving Mr. Green a few weeks to return the Waiver Form (which Mr. Green did not have), and to submit the affidavit detailing his claims against his previous attorneys.

As Mr. Green pointed out his Accompanying Affidavit, at the November 17 Conference, where the Judge relieved Ms. Dolan from further representing Mr. Green, and granted him Pro Se Status, the Judge strongly cautioned Mr. Green on proceeding entirely Pro Se, and suggested to Mr. Green that he first consult with an attorney about his IAC issues, other post-conviction issues, and his concerns with not receiving his Client / Case File(s) and other information. So, Mr. Green, largely off the advice of the Judge, requested the District Court appoint CJA Stand-by Counsel to assist and advise him.

At the close of the November 17 Conference, the Judge explained to Mr. Green to speak with his new CJA Counsel, and said that the Court would set another conference for a few weeks down the road to discuss what came about said conversation(s) with the not yet appointed CJA Counsel. However, just two (2) days after all of this, on November 19, 2021, the Judge issued the Nov. 19 Order, only giving Mr. Green a couple of weeks to sign and return the Waiver Form (which he did not have), and to submit his affidavit of facts detailing his IAC and other claims. Moreover, the Judge did this knowing that Mr. Green had not yet been appointed Stand-by Counsel, and had not yet had a chance to speak with Stand-by Counsel about things like his IAC and other post-conviction claims, and the fact that he still was without his Case / Client File(s) and other relevant Case documents and similar related information. Obviously, the Judge was not all that concerned with whether Mr. Green fully understood the consequences of the Nov. 19 Order, nor whether or nor he was even ready and able to comply with such. This conduct on part of the Judge is completely contradictory to his comments at the November 17 Conference, where the Judge made it appear as though he was concerned about the peril Mr. Green was in, that he was not a lawyer, and that these proceedings are complicated, requiring him to first discuss them with a trained professional before proceeding forward. This is because the Judge did not

want Mr. Green to complete the Waiver Form nor affidavit and was hoping he could just outright deny Mr. Green of his attempts to bring forth said claims--which he successfully ended up doing.


### 4. The Collective Whole


Mr. Green submits that there are several individual factors here themselves that warrant recusal, from the Judge's conduct, statements, and behavior at the January 5 Conference, to his comments regarding his already judging Mr. Green's claims of ineffective assistance of counsel regarding Mr. Breslin and Ms. Geller before ever providing Mr. Green with a formal hearing on those claims. Moreover, all of the issues and concerns discussed by Mr. Green herein, and in the Accompanying Affidavit, especially when taken collectively, show that the Judge is bias, partial, and prejudice, and or, at the very least, create an impermissible appearance of such.  Furthermore, such conduct, statements, and behavior on part of the Judge, especially that which took place at the January 5 Conference, was a clear violation of Mr. Green's rights to, inter alia, due process (to an impartial tribunal), and, was done in direct violation of the Judicial Canons, U. S. Code Judicial Conduct, Title 28 U.S.C.  It should come as no surprise then to learn that Mr. Green does not feel as though he can get a fair hearing before this Judge, who should have recused himself upon Mr. Green's timely and legally sufficient Recusal Papers submitted in the District Court.


## VI.  Relief Sought


WHEREFORE the Petitioner/Defendant, Brandon Green, Pro Se, RESPECTFULLY PRAYS that the Second Circuit Court of Appeals, for the reasons Contained herein, and in the accompanying Emergency Stay Request and Affidavit of Facts, will issue on Order directing the Honorable District Court Judge, Paul G. Gardpehe, to recuse himself, and allow for the appointment of another judge to hear the proceedings; and/or, issue an order directing the Judge to formally rule on the Recusal Papers; and/or, issue any and all other available relief deemed appropriate for remedying these grievances of Mr. Green, to include, but not limited to, issuing an Emergency Stay of the District Court Proceedings.

IT IS SO PRAYED On this 13th Day of June 2021.


Respectfully Submitted,


_____/S/_____

Brandon Green Reg. # 56400-054

Petitioner / Defendant, Pro Se

MDC - Brooklyn

P. O. Box 329002

Brooklyn, New York 11232


## SWORN DECLARATION AND GOOD-FAITH CERTIFICATE


I, Brandon Green, DO HEREBY Certify under penalty of perjury the information contained in the foregoing Mandamus Petition is submitted in Good Faith, and is moreover true and correct. 28 U.S.C. Section 1746.


SWORN to on this 13th day of June 2021.


Signature: _____/S/_____

Print:  Brandon Green


cc: Office of AUSA;

Clerk of Court, SDNY

To: Judge Paul G. Gardpehe

40 Foley Square, New York, NY 10007


From: Brandon Green,

Petitioner / Defendant.


-------------------------------------------X


Dist. Ct. Case No. 16 Cr. 281,

App. Ct. Case No. (Unknown / Unassigned)



## NOTICE OF EMERGENCY MOTION AND INTENT TO FILE


      PLEASE TAKE NOTICE that the Petitioner / Defendant, Brandon Green, Pro Se, HEREBY RESPECTFULLY submits with the Second Circuit Court of Appeals his accompanying "Emergency Stay Request".  Mr. Green is submitting this Emergency Stay Request because he is scheduled to be sentenced in the District Court on June 17, 2021, which is less than one week away, and the District Court Judge assigned to the case, the Honorable Paul G. Gardephe (hereafter the "Judge"), refuses to recuse himself following Mr. Green's submission of timely and legally sufficient Affidavit(s) and Motion(s) to recuse.  Therefore, Mr. Green is seeking an Emergency Stay of the District Court proceedings from the Second Circuit, pending this Court's review of his Petition For Writ of Mandamus - which will be filed shortly - to seek review the Judge's refusal to recuse.  However, due to difficulties imposed on Mr. Green by virtue of his being a Pro Se defendant, who is incarcerated during a Global Pandemic, it has and continues to not be easy for Mr. Green to draft up all of these legal pleadings (referring to the Emergency Stay Request and Mandamus Petition); therefore, and being that there is not much time until his sentencing, Mr. Green will be filing these Pleadings as is: Now, he is filing the Emergency Stay Request, which accompanies this Notice; and, tomorrow, or as soon thereafter as possible, Mr. Green will be submitting his Mandamus Petition, and Affidavit of Facts In Support of Said Mandamus Petition, and the Emergency Stay.  In the meantime, however, Mr. Green invites the Second Circuit Judges to review this Emergency Stay Request, and, if it feels appropriate, issue any and all available relief deemed fair and just here, and moreover necessary to remedy the egregious violations of Mr. Green's rights which have and continue to take place in the District Court.

EXECUTED On this 11th Day of June 2021.

Respectfully Submitted,

_____/S/_____

Brandon Green Reg. # 56400-054

Petitioner / Defendant, Pro Se

MDC - Brooklyn

P. O. Box 329002

Brooklyn, New York 11232

To: Judge Paul G. Gardephe

40 Foley Square , New York, NY 10007


From: Re Brandon Green,

Petitioner/Defendant.

-------------------------------------------------X


Dist. Ct. Case No. 16 Cr. 281, App. Ct. Case No. (Unknown/Unassigned)


EMERGENCY STAY REQUEST


I. Introduction


Petitioner / defendant, Brandon Green, Pro Se, hereby respectfully moves the Second Circuit Court of Appeals for Emergency Relief in the form of a Stay of the District Court proceedings pending its review of the District Court Judge's, the Honorable Paul G. Gardephe's (hereafter the "Judge"), refusal to recuse himself from the above-listed Case. The grounds supporting this Motion are contained below; and, in the accompanying Affidavit of Facts, and Mandamus Petition:


II. Conclusion


A Stay of the District Court proceedings is warranted here because Mr. Green is likely to succeed on the merits of his accompanying Mandamus Petition.


III. Some Relevant Law


1. Liberal Construction; Pro Se Pleadings

Courts are required to interpret pro se litigants' papers liberally to raise the strongest arguments they suggest. See, e.g., Willey Kirkpatrick, 801 F. 3d 787, 790 (2d Cir. 1994).

2. Standard for Obtaining Stay; Court of Appeals;

The standard for obtaining a stay from the Court of Appeals is "generally the same" as the four-factor test for obtaining a stay from a District Court. Federal Appellate Practice and Procedure in a Nutshell (2nd Ed.) (Quoting Hilton v. Braunskill, 481 Ed. at 776) (Quotations in Original).

3. District Court Considerations; Whether to Grant Stay

In deciding whether to grant a motion to stay relief pending appeal, a district court considers "'(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.'" In Re Application of Apostolos Mangouras To Conduct Discovery For Use In A Foreign Proceeding Pursuant to 28 U.S.C. Section 1782, 2017 U.S. Dist. LEXIS 228268 (S.D.N.Y. 2017) (Quoting Nken v. Holder, 556 U.S. 418, 426, 129 S. Ct. 1749, 173 L. Ed. 2d 550 (2009) (Quoting Hilton v. Braunskill, 481 U.S. 770, 776, 107 S. Ct. 2113, 95 L. Ed. 2d 724 1987)).

IV. Some Relevant Facts

The relevant facts supporting this Emergency Stay Request are contained within the accompanying Affidavit of Facts in Support of Mandamus Petition; and, Emergency Stay Request" (hereafter the "Accompanying Affidavit"); which Mr. Green fully adopts and incorporates herein. Moreover, Mr. Green asks those reading this request to, if they have not already, read the Accompanying Affidavit before proceeding forward with further review and consideration of this Emergency Stay Request.

V. Brief Procedural History

Mr. Green filed Affidavit(s) and Motion(s) to Recuse, with accompanying papers, in the District Court, on or about February 26, 2021 (see Docket No. 955) (hereafter the "Recusal Papers"), asking the District Court Judge, the Honorable Paul G. Gardephe, to recuse himself. A few months later, and with his sentencing then scheduled for June 8, 2021, Mr. Green sent a Formal Request and Notice of Intent (see Docket No. 994) (hereafter the "Formal Request") to the District Court (filed May 20, 2021), asking the Judge to formally rule on the Recusal Papers, and or to issue a Stay. Moreover, in the Formal Request, Mr. Green apprised the Judge of his intent to seek, in the Court of Appeals, a Stay of the District Court proceedings, and mandamus review of the Judge's refusal to recuse, in the event the Judge refuses to do so. Therefore, since Mr. Green's sentencing, which is now scheduled for June 17, 2021, is less than a week away, and the Judge has not recused himself, and has stated that he will not do so, Mr. Green now seeks this Emergency Stay, and review of the Judge's refusal.

V.  A Discussion on The Relevant Law and Facts

A.  Stay of District Court Proceedings

The standard for obtaining a Stay from the Court of Appeals is "generally the same" as the four-factor test for obtaining a stay from a district court. Federal Appellate Practice and Procedure in A Nutshell (2nd Ed.) (Quoting Hilton v. Braunskill, 481 U.S. 776 (Quotations in Original).  In deciding whether to grant a motion to stay relief pending appeal, a district court considers "'(1) whether a stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; (4) where the public interest lies.'" In Re Application of Apostolos Mangouras To Conduct Discovery For Use In A Foreign Proceeding Pursuant to 28 U.S.C. Section 1782, 2017 U.S. Dist. LEXIS 228268 (S.D.N.Y. 2017) (Quoting Nken v. Holder, 556 U.S. 418, 426, 129 S. Ct. 1749, 173 L. Ed. 2d 550 (2009) (Quoting Hilton v. Braunskill, 481 U.S. 770, 776, 107 S. Ct. 2113, 95 L. Ed. 2d 724 1987)).

1.  Likelihood of Success on the Merits

The issue(s) being reviewed by the Appellate Court here is the District Court Judge's refusal to recuse himself following Mr. Green's submission to the Judge of timely and legally sufficient Affidavit(s) and Motion(s) to Recuse (see Docket No(s). 955, 956, 963,956-960) (hereafter collectively referred to as the "Recusal Papers", unless otherwise individually referenced).  In reviewing such a refusal to recuse, the Second Circuit employs an abuse of discretion standard. See In Re Vincent Basciano, 542 F. 3d 956 (2d Cir. 2008).  Moreover, it's quite evident here, from review of the accompanying Mandamus Petition and Affidavit of Facts, and the record of the District Court proceedings, that the Judge abused his discretion by refusing to recuse himself under several different legal provisions--from the U.S. Code of Judicial Conduct, to 28 U.S.C. Section(s) 144, and 455, and, even for violating Mr. Green's constitutional rights to, inter alia, an impartial tribunal, see, generally, U.S. Const. Amend. 5, Due Process Clause. Additionally, there also exists here an impermissible appearance of bias, prejudice, and partiality on behalf of the Judge against Mr. Green, due to several different individual incidents that occurred in and throughout the District Court Proceedings; and, moreover, a fortiori, these individual incidents taken collectively make it appear as though the Judge is in fact bias, partial, and prejudice against Mr. Green. An example of such incident(s) would be the conduct, statements, and moreover behavior of the Judge that took place at the January 5 Conference (see the Accompanying Affidavit of Facts for more details on this, and/or, check out Mr. Green's Recusal Papers, and or the record/transcripts of the January 5, 2021 Status Conference held in this matter).  Accordingly, Mr. Green's Mandamus Petition is meritorious, and therefore, a Stay should issue here.

2.  Irreparable Injury

Black's Law Dictionary (Fifth Pocket Ed.), defines "irreparable" as: "Incapable of being rectified, restored, remedied, cured, regained, or repaired; that cannot be made right or good." Id. at 429; and, "injury" as: "1. The violation of another's legal right, for which the law provides a remedy; a wrong or injustice. 2. Any harm or damage." Id. at Pg. 405. "Harm" is defined as: "Injury, loss, damage; material or tangible detriment.: Id. at Pg. 369. Moreover, Mr. Green argues that if a stay of the District Court proceedings is not ordered immediately, and the District Court Judge is allowed to stay on his case, Mr. Green will be irreparably harmed because the Judge refuses to hear Mr. Green's ineffective assistance of counsel and other claims prior to sentencing; consequently, Mr. Green will be illegally sentenced, because his convictions were obtained in direct violation of the U.S. Constitution. Furthermore, the Judge refuses to hear Mr. Green's IAC and other claims prior to sentencing; and, Mr. Green seeks review of said refusal by an impartial tribunal. These issues must be addressed; and, when they are, they will show that Mr. Green's conviction(s) were obtained illegally. Accordingly, any sentence the Judge gives Mr. Green will be an illegal one, and will cause him to have to serve more time in prison, when he otherwise should not be in here: Every day Mr. Green spends incarcerated is another day wrongfully spent imprisoned, which he can "never" get back. Therefore, Mr. Green has and continues to suffer irreparable harm / and injuries so long as these District Court proceedings are not Stayed; whereas, if a Stay was issued, the Appellate Court would grant Mr. Green's accompanying meritorious Mandamus Petition, and would order the Case reassigned to another Judge, who would then hear Mr. Green's post-conviction claims--and, if that were done, it would be discovered that Mr. Green's conviction cannot stand, and that he should be ordered immediately released from custody due to the egregious violations of his most basic rights, which took place in the District Court.

### 3. Substantial Injury to Other Parties

The other party to the District Court proceedings is the Government (the United States of America); and they are not going to suffer any substantial injury at all as a result of the Appellate Court staying the District Court proceedings. In fact, the Government would suffer more if the District Court proceedings are not stayed, because it will only prolong addressing the issues surrounding the violations of Mr. Green's constitutional rights, which it has an affirmative duty to also protect and defend.

### 4. Public Interest

The interests of the public lie with ensuring that, inter alia, the Court's and moreover Government are operating within the bounds of the law; as well as the defense attorneys (especially those appointed under the Criminal Justice Act (CJA) (which is the modern civil rights act)). Moreover, if these individuals are not performing their jobs within the bounds of the law, the public has a right to know. In fact, if the things that Mr. Green are saying took place in and throughout his Case are true, and he avers that they are, then the Government and Courts have an affirmative obligation to the public, as well as to Mr. Green, to address and remedy these injustices--and this involves the Second Circuit issuing a Stay of the District Court Proceedings pending its review of the accompanying meritorious Mandamus Petition. Furthermore, Mr. Green will not be able to receive a fair hearing on, inter alia, his claims of ineffective assistance of counsel and government misconduct until another judge is assigned to this Case; a judge that is not partial. Therefore, the public interest, as well as the interest of justice, will

be best served by the Court of Appeals Staying the District Court Proceedings pending its review of Mr. Green's accompanying meritorious Mandamus Petition; so that the Appellate Court can then issue an Order recusing the Judge, and allowing for the appointment of another judge to hear the proceedings. Once that is done, Mr. Green will be able to then move on to addressing his post-conviction IAC and other claims, which will bring to light the egregious violations of his rights that have and continue to take place here. Not only is this best for Mr. Green, but this would be best for the public as well, for the aforementioned and other obvious reasons.

Furthermore, Mr. Green submits that he has two online petitions, one asking for supporters of his request for a new trial, and the other asking for supporters of his request for a new judge. In fact, the two online petitions currently have about 1,500 - 2,000 signatures from supporters. All these individuals signed Mr. Green's petitions and support his request that a new trial and a new judge are warranted here. Moreover, Mr. Green submits that the signatures of these individuals support his contentions that the public interest lies with Staying the District Court proceedings, so all his underlying issues can be addressed, to include the issue of recusal being presented in the accompanying meritorious Mandamus Petition. Additionally, Mr. Green submits that there are in fact members of the "Public" standing outside this very Courthouse (referring to the Second Circuit), who are all demanding/asking that something be done here. These Public supporters of Mr. Green's cause will be outside of the Second Circuit June 9th, 10th, and 11th, at least. These members of the Public refuse to stand by and do nothing while this metaphorical knee is being placed to the back of Mr. Green's neck, by virtue of his wrongful convictions, and violations of his rights that have and continue to take place in the District Court. Clearly, the Public interest now, more than ever, is in addressing the systemic violations of Mr. Green's rights that have taken place in the District Court; which includes the Judge's refusal to recuse. Accordingly, an emergency temporary stay of the District Court proceedings should be issued pending the Second Circuit's review of Mr. Green's accompanying meritorious Mandamus Petition. See in Re Dov Shellef, 09-1183-op (2d Cir. Mar 24, 2009) (where this Court temporarily issued an emergency stay pending mandamus review).


VI. Relief Sought


WHEREFORE the Petitioner / defendant, Brandon Green, Pro Se, respectfully moves the Second Circuit Court of Appeals for an Immediate / Emergency Stay of the District Court Proceedings, pending the Second Circuit's review of Mr. Green' s accompanying meritorious Mandamus Petition.

EXECUTED On this 11th day of June 2021.


Respectfully Submitted,


_____/S/_____

Brandon Green Reg. # 56400-054

Petitioner / Defendant, Pro Se




CERTIFICATE OF GOOD-FAITH; AND, SWORN DECLARATION


    I, Brandon Green, HEREBY CERTIFY that the foregoing Emergency Stay Request has been submitted in good faith; and, I swear under PENALTY OF PERJURY that the information contained in same is true and correct.


CERTIFIED and SWORN TO On this 11th day of June 2021.


Signature: _____/S/_____

Print: Brandon Green

CERTIFICATE OF SERVICE


I, Brandon Green, DO HEREBY CERTIFY that a true and correct copy of the foregoing Emergency Stay Request was given to institutional staff at MDC for delivery, via U.S. Institutional Legal Mail, to: The Office of the United States Attorney, Southern District of New York, One St. Andrews Plaza, New York, New York 10007-1703.



MAILED On this 11th day of June 2021.



Respectfully Submitted,


_____/S/_____

Brandon Green Reg. # 56400-054

MDC - Brooklyn

P. O. Box 329002

Brooklyn, New York 11232